HOWARD W. BRILL, Chief Justice |!Appellant Serandon Starling appeals from the sentencing order entered by the Miller County Circuit Court reflecting his convictions and sentences for first-degree murder and committing a terroristic act. Each offense was enhanced for employing a firearm, and Starling was sentenced as a habitual offender to a total term of life imprisonment plus fifteen years.[1] The attorney appointed to represent appellant on appeal has filed a motion to -withdraw as counsel and a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and Arkansas Supreme Court Rule 4 — 3(k) (2015), asserting that the appeal is without merit. In accordance with Rule 4-3(k)(2), our clerk furnished appellant with a copy of the brief. | ¡Appellant submitted two pro se points for reversal, and the State has responded. Because appellant received a sentence of life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2015). We' find no reversible error and, therefore, affirm, appellant’s convictions and grant counsel’s motion to withdraw. I. Facts The following facts are adduced from the testimony and evidence presented at trial. On April-18, 2013, Demetrica Satter-white contacted Prank Starling, appellant’s brother (“Frank”), and told him that Billy “Wild Bill” Hawkins, was interested in buying some crack cocaine from him. According to Satterwhite, Wild Bill planned to sell the drugs to some men from Ash-down. Satterwhite drove Prank, Wild Bill, and Aundrey Battle to a local McDonald’s, where she saw her cousin, Andrew “P.J.” Cheatham.- Satterwhite got out of her car and went over to P.J.’s car to talk to him; Wild Bill, who had possession of the drugs, followed her. Wild Bill then got in P.J.-’s car, and the two of them drove off together. Frank became angry when Wild Bill left with the drugs without paying for them and accused Satterwhite of setting him up to get robbed. According to Satterwhite, Prank forced her to drive Battle and him around town to look for P.J. and Wild Bill. During the pursuit of P.J. and Wild Bill, Satterwhite stopped at Frank’s house and picked up Justin Benton. She then drove to Brittany Baker’s house, where she saw a gold car parked outside, and picked up Khyia Primm and Quanissa Johnson. Sat-terwhite, Frank, and. the others stopped for gas at a local convenience store, where Satterwhite said she saw the gold car again. Satterwhite went into the store and saw appellant, whom she did not know. Satterwhite testified that |3appellant identified himself as Serandon and that she later learned that he was in the gold car. Satterwhite walked out of the store, and one of her passengers saw P.J. drive by, so Satterwhite and the driver of the gold car started following P.J.’s car. Satterwhite testified that the. driver of the gold car blocked off P.J.’s car o.n a side street and that she pulled up behind P.J.’s car. Appellant got out of the gold car and went to P.J.’s car. Appellant shot at P.J.’s vehicle, and one of the bullets struck P.J. in the forehead, killing him. II. Adverse Rulings A. Directed Verdict — Credibility Counsel contends that the circuit court did not err in denying appellant’s motions for directed verdict. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the. evidence. E.g., Anderson v. State, 2011 Ark. 461, at 3, 385 S.W.3d 214, 217. This court determines whether the' verdict is supported by substantial evidence, direct or circumstantial. Id., 385 S.W.3d at 218. Substantial evidence is evidence that is forceful enough to compel á conclusion one way or the other beyond suspicion or conjecture. Id., 385 S.W.3d at 218. The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. Id., 385 S.W.3d at 218. A person commits first-degree murder if “[w]ith a purpose of causing the death of another person, the person causes the death of another person.” Ark.Code Ann. § 5-10-102(a)(2) (Repl.2013). “A person commits a terroristic act if, while not in the commission of a 'lawful act, the person [s]hoots at or in any planner projects an object at a conveyance which is being operated or which is occupied by another person with the purpose to cause |4injury to another person or damage to property,” Ark.Code Ann. § 6—13—310(a)(1) (Repl.2013). “A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person’s conscious object to engage in conduct of that nature or to cause the result.” Ark. Code Ann. § 5-2-202(1) (Repl.2013). At trial, appellant moved for a directed verdict, contending that the State had presented no credible evidence to maintain the charges. Specifically, appellant argued, [W]e note the lack of credibility of witnesses due to their prior inconsistent statements and motives to lie based on their testimony here in court and the fact that they had charges pending or wanted to avoid having charges brought at all against them.. The State responded, I would ask the court to recall the testimony of the witnesses, specifically not only the law enforcement officers, but Demetrica Satterwhite, Phillip Blackwell, Shae Jones, and Justin Benton who were all present at the time this shooting occurred. Demetrica Satterwhite specifically testified that it was Serandon Starling who fired the gun that killed P.J. Phillip Blackwell specifically stated that it was Serandon- Starling-that fired the weapon. Shae Jones specifically stated that Ser-andon Starling had a weapon that he produced from his waistband when he got out of the car and she saw him with it again when he returned to the car. And Justin Benton stated that he saw Serandon Starling retrieve a gun from his Camero [sic] before getting into the car. He always carried, a. .45 and that he specifically recalled Serandon Starling shooting that .45 . striking P.J.’s car. The bullet that was recovered from RJ.’s head was a- .45 which can- be directly linked back to the gun that Mr. Starling possessed and shot. Regarding their motive to testify, there are ... no charges pending against Shae Jones nor has there been any indication to her by the State that- any charges would be brought. Mr. Benton currently has charges pending and no agreements have been made by the State with Mr. Benton. Demetrica Satterwhite.has charges pending and she specifically testified under oath that no promises have been made to her by the State in exchange for her testimony. No plea bargains have been made by the State, with the State in-exchange for her testimony. jsVariances and discrepancies in the proof go to the weight or credibility of the evidence and matters for the fact-finder to resolve. Marts v. State, 332 Ark. 628, 644, 968 S.W.2d 41, 49 (1998). The trier of fact is free to believe all or part of any witness’s testimony and may resolve questions of conflicting testimony and inconsistent evidence. E.g., Burley v. State, 348 Ark. 422, 430, 73 S.W.3d 600, 605 (2002). Accordingly, -when there is evidence of a defendant’s guilt, even if it is conflicting, it is for the jury as fact-finder to resolve any conflicts and inconsistencies; it is not for the court to resolve on ‘ a directed-verdict motion. Marts, 332 Ark. at 644, 968 S.W.2d at 49; see also State v. Long, 311 Ark. 248, 251, 844 S.W.2d 302, 304 (1992) (stating that “when a trial court exceeds its duty to determine the sufficiency of the evidence by judging the credibility of the evidence, it commits an error that requires correction”). In his directed-verdict motions, appellant did not specify which witnesses gave inconsistent prior statements, which witnesses were motivated to lie because they had charges pending, or which witnesses wanted to avoid charges. Nevertheless, we conclude that, through the testimony and evidence presented at trial, the jury was apprised of the witnesses’ involvement in the crime. Moreover, the jury heard testimony regarding whether witnesses had pending charges. Satterwhite and Phillip Blackwell, who was a passenger in the gold car, testified that appellant shot at P.J.’s vehicle. Satterwhite testified that she was incarcerated in the Miller County Sheriffs Department with a charge pending for first-degree murder. She stated that she was testifying for the State but that the State had made her no promises and that she had not | ¿received a plea deal for her •testimony. Shae Jones, appellant’s girlfriend, testified that she was with appellant at the time of the murder, that appellant had a weapon that he produced from his pocket when he got out of the car, and that she saw him with the gun when he returned to the car. Justin Benton testified that he saw appellant shoot at P.J. Benton also testified that he faced criminal charges for hindering apprehension in connection with the murder. The jury has the sole authority to evaluate the credibility of evidence and to apportion the weight to be given to the evidence. E.g., Smoak v. State, 2011 Ark. 529, at 6, 385 S.W.3d 257, 261. Viewing the evidence in the light most favorable to the verdict, we conclude that it was reasonable for the jury to infer from the circumstances that appellant committed the offenses of first-degree murder and terroristic act. We hold that the circuit court did not err in denying appellant’s motions for directed verdict. B. Jury Instruction — Reckless Manslaughter At trial, the circuit court instruct ed the jury on first-degree murder and the lesser-included offense of second-degree murder and refused appellant’s request to instruct the jury on the lesser-included offense of reckless manslaughter. We have often stated that refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. E.g., Ellis v. State, 345 Ark. 415, 418, 47 S.W.3d 259, 260 (2001). However, we will affirm a trial court’s decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction. Id. at 418, 47 S.W.3d at 260. Counsel contends that the circuit court did not err in refusing to instruct the jury on 17reckless manslaughter pursuant to Arkansas Code Annotated section 5-10-104(a)(3) (Repl.2013), which states that a person commits manslaughter if the person recklessly causes the death of another person. A person act’s recklessly with respect to the attendant circumstances or a result of his her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. Ark.Code Ann. § 5-2-202(3)(A) (Repl.2013). The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor’s situation. Id. § 5-2-202(3)(B). In support of his request for the manslaughter instruction, appellant argued at trial that testimony demonstrated that he chased P. J. to “scare him” and that his intent was to “beat up” P.J., not to kill him. The State argued that, although there was testimony that some of the “girls in the car may have wanted [P.J.’s] ass whipped,” there was no testimony whatsoever that-appellant intended only to engage in a ñstfíght with P. J. In this case, the jury was presented with evidence that appellant chased P.J., blocked PJ.’s vehicle with his vehicle, and ran up to P.J.’s car, shooting once into the hood of the car and a second time through the windshield of the car, killing P.J. We agree with counsel’s contention that the circuit court did not err in refusing to instruct the jury on reckless manslaughter. Because there was no rational basis for giving an instruction for reckless manslaughter, we affirm the circuit court’s ruling.[2] |SC. Motion in Limine Counsel contends that the circuit court did not err in overruling appellant’s objection to the State’s motion in limine. Before trial, the State filed a motion in limine to exclude evidence of P.J.’s past involvement in drug transactions and his reputation as a drug dealer. After hearing arguments from the parties, the circuit court granted the State’s motion in limine with respect to the dates prior to the date in question or dates, with other people even on the same date if they didn’t involve these parties. But the circumstances surrounding the factual basis, the facts concerning how this thing came about, or this case came about, would certainly be part of this ease. But prior days or prior events with separate parties that are not otherwise involved in this case would be irrelevant. “Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2015). Evidencé which is not relevant is not admissible. Ark. R. Evid. 402. The decision to admit or excludé evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion or absent a showing of prejudice. Bruner v. State, 2013 Ark. 68, at 11, 426 S.W.3d 386, 393. Here, the circuit court allowed extensive testimony about the drug deal between Wild I9BÜI and Frank. The jury was made aware of the facts and circumstances leading up to P.J.’s death. Specifically, the jury learned that P.J.’s death resulted from a drug deal gone bad between Frank and Wild Bill. We hold that the circuit court did not abuse its discretion in excluding evidence about P.J.’s past involvement in drug transactions and his reputation as a drug dealer. D. Other Adverse Rulings Counsel has addressed the remaining adverse rulings.[3] Having reviewed the record and briefs, we agree with counsel that none of the rulings present a meritorious ground for reversal. III. Pro Se Points A.' Directed Verdict — Intent Appellant contends that .the circuit court erred in denying his motion for directed verdict on the ¡charge of first-degiee murder because the State failed to establish that he possessed- the. intent -to purposely cause the death of another. The State contends, that appellant’s pro se sufficiency challenge is barred because appellant has. changed-the nature of [ mhis sufficiency argument on appeal. We agree.. At trial, appellant argued that there was no credible evidence presented in the State’s case for the charges to be maintained. On appeal, however, appellant contends that the State failed to prove that he intended to purposely cause.the death of P. J. A party is not permitted to change the scope and nature of a direeted-verdict motion on appeal. See Lamb v. State, 372 Ark. 277, 279, 275 S.W.3d 144, 146 (2008). B, Jury Instruction — Extreme-Emotional-Disturbance Manslaughter Appellant contends that the circuit court erred in refusing, to instruct the jury on extreme-emotional-disturbance manslaughter. At trial, appellant requested jury instructions for the lesser-included offenses of second-degree murder and reckless manslaughter. Appellant did not, however, request an instruction for extreme-emotional-disturbance - manslaughter.[4] Consequently, we do not address appellant’s contention on appeal. See, e.g,, White v. State, 370 Ark. 284, 294, 259 S.W.3d 410, 417 (2007) (stating that appellant’s-failiire to request a jury instruction at trial precludes our review because we do. not address issues raised for the first time on appeal). IV. Rule 4-3(i) Pursuant to Arkansas Supreme Court Rule 4 — 3(i), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no | ^prejudicial error has been found. Affirmed; motion to withdraw granted. Baker and Hart, JJ., dissent. . Starling was sentenced to a term of life imprisonment for first-degree murder and a term of life imprisonment for terroristic act, to be served concurrently. Starling’s firearm enhancements were to be served consecutively to his life sentences but concurrent to each other. . 1 Counsel asserts that, because the circuit court instructed the jury on first-degree murder and second-degree murder, and appellant was convicted of first-degree murder, then any error committed by the circuit court in declining to instruct the jury on the lesser-included offense of reckless manslaughter is cured by the skip rule. See Easter v. State, 306 Ark. 615, 620, 816 S.W.2d 602, 605 (1991) ("When a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured.”). Because we hold that the circuit court did not err in refusing to instruct the jury on reckless manslaughter, we need not engage in a skip-rule analysis. Here, there is no error to cure. . Over defense counsel’s hearsay objections, the circuit court allowed Satterwhite’s testimony about her conversations with Wild Bill and Frank. Because this testimony was not offered for the truth of the matter asserted, the circuit court did not err in overruling the objections. We agree with counsel’s assertion that we do not consider appellant's pro se posttrial motions because they are not preserved or our review. Appellant filed the pro se motions after the notice of appeal had been filed, and the circuit court did not rule on the motions. Even assuming the pro se motions were deemed denied by operation of law, see Ark. R.App. P.-Crim. 2(b)(1), appellant did not file an amended notice of appeal-to appeal the denial of those motions, see Ark. R.App. P.—Crim. 2(b)(2), . A person commits manslaughter if the person causes the death of another person under - circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. Ark. Code Ann. § 5—10—104(a)(1)(A). The reasonableness of the excuse is determined from the viewpoint of a person in the actor's situation under the circumstances as the actor believed them to be. Id. § 5-10-104(a)(l)(B).