

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-16-854

| | |
|---|---|
| FRED ALBERT KAUFFELD<br>**APPELLANT**<br><br>V.<br><br>STATE OF ARKANSAS<br>**APPELLEE** | **Opinion Delivered** SEPTEMBER 13, 2017<br><br>APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT<br>[NO. 36CR-15-89]<br><br>HONORABLE WILLIAM M. PEARSON, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Fred Albert Kauffeld appeals his convictions for first-degree murder, second-degree murder, and residential burglary following a jury trial in Johnson County Circuit Court. Kauffeld was charged in relation to a break-in at the home of Bill Nobles and the subsequent shooting of Sonny Smith, an auxiliary sheriff's deputy who had responded to the call. On appeal, Kauffeld argues that the trial court erred (1) in denying his motion for directed verdict that challenged the sufficiency of the State's evidence on each conviction, and (2) in admitting a statement written on a jail-cell wall into evidence due to lack of proper authentication. We affirm.

The first appellate issues we consider are the sufficiency-of-the-evidence arguments. On appeal, the appellate courts treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214. The appellate court determines whether the verdict is supported by substantial evidence, direct or

SLIP OPINION

circumstantial. *Id*. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. Variances and discrepancies in the proof go to the weight or credibility of the evidence and are matters for the fact-finder to resolve. *Id*. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as fact-finder to resolve, not the court. *Id*.

Circumstantial evidence may constitute substantial evidence to support a conviction. *Brunson v. State*, 368 Ark. 313, 245 S.W.3d 132 (2006). Guilt can be established without direct evidence, and evidence of guilt is not less because it is circumstantial. *Id*. Circumstantial evidence is substantial when it excludes every other reasonable hypothesis than that of guilt. *Id*. We will disturb the jury's determination only if the evidence did not meet the required standards so that the jury had to speculate and use conjecture to reach its verdict. *Richardson v. State*, 2014 Ark. App. 679, 449 S.W.3d 718. The sufficiency of the evidence is determined on the basis of the record as it stands, considering all the evidence heard at trial, whether properly or erroneously admitted. *Bovee v. State*, 2011 Ark. App. 158.

The evidence at trial, viewed most favorably to the State, revealed the following. At the time of the crimes in May 2015, Kauffeld was involved in a "love triangle." Nancy

Deatherage had on-again-off-again relationships with both Kauffeld and Bill Nobles, and they all knew each other.[1] On the night of May 14, 2015, Deatherage called Kauffeld to come get her from Nobles's mobile home, located off a rural Johnson County road. Nobles was not home when Kauffeld arrived. Deatherage and Kauffeld gathered her dog and some personal belongings; Kauffeld took Deatherage to his house, which was about ten miles away, and left her there.

Kauffeld drove his truck back to the mobile home and went back inside, but Nobles returned, chasing Kauffeld out of his home and yelling at him. Nobles found a rifle that Kauffeld had dropped outside; Nobles took it inside and locked up his house. Nobles then went looking for Kauffeld, finding his truck parked about a quarter mile from the mobile home. Nobles slashed two of the truck's tires. When Nobles went back home, he discovered broken glass on his deck and that the rifle was no longer there. Nobles then went to his parents' house to call the police.

Auxiliary Deputy Sheriff Sonny Smith and Deputy Curtis Bishop responded to the call, meeting Nobles at the mobile home. Nobles told them that someone had broken in and might still be inside. Nobles reported that several items were missing. Nobles told them that the perpetrator had a rifle, but he did not tell them that the perpetrator was appellant.

Lieutenant Jeff Wood arrived and began to drive back and forth along the country road beside Nobles's home, using his vehicle's spotlight to search for the suspect. A canine unit

---

[1] At the time of the jury trial, Deatherage was married to Nobles.

SLIP OPINION

was added to the search party. The dog picked up a scent and followed it toward a wire fence. Law enforcement's infrared heat sensor picked up a heat source on the other side of the fence where the dog was trying to lead them. Smith was the first to climb over the fence. Smith then yelled, "Show me your—" when shots were fired from the direction of the heat source. Law enforcement personnel described these shots as sounding like "pops," whereas a second set of shots that followed were louder and sounded more like "banging." Smith suffered a gunshot wound to the torso and thigh; Smith dropped to the ground, and he died.

Appellant was arrested by the other officers on scene, and nearby they found a black backpack, a plastic container of loose change, a cell phone, a clock, a flashlight, and a sex toy. Nobles confirmed that those items came from his home and that he did not give anyone permission to take the items. Law enforcement determined that, given the subsequent examination of the scene, appellant had shot his Marlin .22 rifle at Smith, and Smith had shot his .45-caliber service weapon at appellant.

Deatherage testified that she never asked appellant to go back to Nobles's house to retrieve her things. She denied giving appellant permission to go back inside or asking him to get a container of loose change or a sex toy.

Appellant testified that he drove his truck to Nobles's house that night, that he went armed with a rifle, that he reentered when he returned to the house, and that he took items from the house that did not belong to him. Appellant maintained that his only intent upon entering was to recover Deatherage's things so she would not have to go back. Appellant said

that he ran and hid from Nobles when Nobles caught him there. He said that he hurt his knee as he was running away from the mobile home. Because Nobles was hunting for him, appellant hid in a low spot about halfway between the mobile home and his truck, near the dirt road. Appellant stated that he decided to stay hidden until daylight, and then he would find a way home. Appellant claimed that he fell asleep in his hiding place after a while and that he did not hear or see law enforcement looking for him.

Appellant admitted that he had shot and killed Smith but said that he had been taken by surprise in the darkness. Appellant said that he thought it was Nobles coming after him, that he feared for his life, that the person shot at him first, and that he only shot in self defense.

The State also presented evidence to the jury of a writing found on appellant's jail-cell wall, where he had been housed awaiting trial. This is a verbatim rendition of the writing:

> **FRED**
>     **KILLER**
>        **KAUFFELD**
> **WAS HERE 10–1–2015**
> **THE MAN**
> **THE MYTH**
> **THE LEGEND**
>     I SHOT THE SHERIFF
>    I KILLED HIS DEPUTY

Appellant admitted that he had written all of it, except for the last two lines that he said were already on the wall.

Defense counsel moved for directed verdict on each count that ultimately resulted in a conviction, and the trial court denied each motion. The jury convicted appellant of first-

degree murder, second-degree murder, and residential burglary.[2] This appeal followed.

## I. *Residential Burglary*

Appellant argues that even if the evidence is substantial that he illegally entered the residence, there is no substantial evidence that he did so with the intent of committing therein a theft of property. Appellant asserts that he entered the residence only in order to remove Deatherage's belongings, which he maintains is not theft. We disagree. A person's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime; therefore, circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict. *Kelley v. State*, 75 Ark. App. 144, 55 S.W.3d 309 (2001). The intent to commit the offense may be inferred from the defendant's conduct and the surrounding circumstances. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995); *S.C. v. State*, 2015 Ark. App. 344, 464 S.W.3d 477.

Deatherage testified that she did not give appellant permission to go back to the residence, to enter the residence when he got there, or to take anything belonging to her.

---

[2]Appellant was charged under two theories of capital murder in two separate counts. Count one resulted in the conviction for second-degree murder. Count two resulted in the conviction for first-degree murder. Count five resulted in the conviction for residential burglary. The trial judge subsequently instructed the jury that, as to their finding of guilt on second-degree murder, there would be no sentence imposed because it was an alternative count to the other charge of murder. Appellant was sentenced to twenty-eight years for first-degree murder, zero years for second-degree murder, and five years for residential burglary. The legality of convicting and sentencing appellant in this manner is not raised as an issue on appeal and is thus not before us. *See State v. Montague*, 341 Ark. 144, 14 S.W.3d 867 (2000); *Blackwell v. State*, 2015 Ark. App. 96.

SLIP OPINION

SLIP OPINION

Furthermore, appellant parked his truck away from the residence, took a rifle with him for protection, fled the residence when he was discovered by Nobles, and was later found hiding in the dark with a rifle and with items that Nobles had reported missing. Those items included a flashlight, a clock, a cell phone, and a plastic container of loose change. These circumstances provided substantial evidence from which the jury could conclude that appellant had the intent to commit theft inside Nobles's home. *See Hayes v. State*, 2014 Ark. 104, 431 S.W.3d 882; *Hubbard v. State*, 2017 Ark. App. 93, 513 S.W.3d 289. Although appellant argues that the evidence was consistent with another reasonable conclusion, being that he only intended to reunite Deatherage with her things, the trier of fact had sufficient circumstantial evidence to find that appellant possessed criminal intent to commit theft. We affirm as to residential burglary.

## II. *First-degree Murder*

Appellant was convicted of first–degree murder under the "felony murder rule." Arkansas Code Annotated section 5-10-102(a) provides that:

> (a) A person commits murder in the first degree if:
> (1) Acting alone or with one (1) or more other persons:
>> (A) The person commits or attempts to commit a felony; and
>> (B) In the course of and in the furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

The State alleged in this case that appellant committed or attempted to commit a residential burglary and "in the furtherance of the felony or in immediate flight" therefrom, he caused

SLIP OPINION

the death of Smith. Appellant argues that there is insufficient evidence that the murder was "in furtherance" of the burglary or "in immediate flight" from the burglary because the death happened away from the residence and long after the alleged crime had taken place. We disagree.

As an initial matter, we reiterate that there was substantial evidence to support appellant's conviction for residential burglary. The only other argument concerning first-degree murder is the challenge to whether there was substantial evidence that the murder took place "in immediate flight" from the burglary. Appellant argued in his directed-verdict motion that the evidence indicated that the murder took place approximately two hours after the break-in had occurred and thus was not "in immediate flight."

In *Wilson v. State*, 262 Ark. 339, 340, 556 S.W.2d 657, 658 (1977), an appeal of a criminal conviction for robbery, our supreme court approved the *Black's Law Dictionary* definition of "immediate," which recites that it means "a reasonable time in view of particular facts and circumstances of the case under consideration." Thus, it was a matter for the jury to decide whether the murder, which took place when appellant was armed and hiding in the dark to avoid being detected, was a reasonably temporal event. It is apparent that appellant was attempting to flee but was hindered in doing so by the circumstances in which he found himself. Bill Nobles had slashed the tires on appellant's vehicle, disabling his means of escape from the area. Thus, the jury could find that the gap in time between the burglary and the flight therefrom would be reasonable under the facts and circumstances of this case. *See*

SLIP OPINION

*Findley v. State*, 307 Ark. 53, 818 S.W.2d 242 (1991) (rejecting Findley's argument that the robbery and murder had to occur within a brief interval of time to qualify as "immediately" for purposes of murder statute at issue; the separation of the robbery from the murder by several days did not render the verdict without sufficient evidence). The trial court did not err in refusing to direct a verdict for the defense on this basis.

III. *Justification Defense*

Appellant argues that there is no substantial evidence to support his convictions for murder because the State failed to disprove his claim of self-defense. Justification becomes a defense when any evidence tending to support its existence is offered, and once raised, it becomes an element that must be disproved by the State beyond a reasonable doubt. *Green v. State*, 2011 Ark. App. 700. Whether one is justified is largely a matter of the defendant's intent and is generally a fact question for the jury. *Id*. A defendant's intent is ordinarily not subject to proof by direct evidence but must usually be established by circumstantial evidence. *Id*. Critical to this inquiry is the reasonableness of the accused's apprehension that he was in danger of death or of suffering great bodily harm. *Id*. Also critical is whether the accused used all reasonable means within his power and consistent with his personal safety to avoid the use of deadly force. Ark. Code Ann. § 5-2-607 (Supp. 2015); *Lewis v. State*, 2014 Ark. App. 730, at 2, 451 S.W.3d 591, 592. The fact-finder is not required to set aside common sense and need not view each fact in isolation but rather considers the evidence as a whole. *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006). The jury is free to accept or reject any part

SLIP OPINION

of a witness's testimony, and credibility and the weight to give any evidence are issues left solely to the jury. *Lewis*, *supra*. The jury decides whether the circumstantial evidence excludes every hypothesis consistent with innocence, and it turns largely on what the jury concluded regarding appellant's intent. *Id.* Importantly, the defendant's belief must be objectively reasonable and not arrived at via fault or carelessness. *Jones v. State*, 2011 Ark. App. 92. In this case, there was evidence from which the jury could find that appellant was not justified in his use of deadly force against Smith.

Appellant was admittedly hiding from Nobles in the nearby darkened wooded area, and appellant remained in the area armed with a weapon. The jury heard testimony that Smith yelled in appellant's direction, "Show me your—" when he was immediately fired upon. Appellant fired his weapon five times, and the flashes of light from the weapon and the sounds indicated to the law enforcement personnel on scene that appellant fired first. The jury could reasonably find on this evidence, giving it due deference on matters of witness credibility, that appellant was not justified in shooting at Smith. The jury, as fact finder, could conclude that appellant's belief that he was justified in using deadly force was not "objectively reasonable" or was "arrived at via fault or carelessness" on his part.

IV. *Authentication and Admission of Writing on Jail-cell Wall*

Prior to trial, the State revealed that it planned to introduce a statement purportedly written by Kauffeld on the wall located in the Pope County Detention Center's E Block, Cell #3. The State contended that on or about October 1, 2015, Kauffeld, of his own volition,

SLIP OPINION

wrote the following on the wall:

> **FRED**
> **KILLER**
> **KAUFFELD**
> **WAS HERE 10-1-2015**
> **THE MAN**
> **THE MYTH**
> **THE LEGEND**
> I SHOT THE SHERIFF
> I KILLED HIS DEPUTY

Defense counsel sought to exclude this evidence, challenging its authenticity. At a pretrial hearing, testimony was taken about who occupied that particular cell between September 29 and October 6, 2015; the State did not have a witness who saw this being written on the wall. The trial judge ruled preliminarily that the statement would be admissible at trial. The trial court reasoned that the evidence showed that appellant was the sole occupant of that cell in the relevant period of time and that appellant's distinctly spelled last name gave it a unique characteristic that supported its authenticity.

At trial, a Pope County correctional officer and the assistant jail administrator testified that appellant was the sole occupant of that particular cell between September 29 and October 6, 2015. The State sought to introduce photographs of the writing on the wall when defense counsel renewed the objection. The renewed objection was overruled. Appellant later testified that he had written

**FRED**
 **KILLER**
  **KAUFFELD**
**WAS HERE 10-1-2015**
**THE MAN**
**THE MYTH**
**THE LEGEND**

Appellant denied that he wrote

I SHOT THE SHERIFF
I KILLED HIS DEPUTY

Appellant claimed that those two lines were already on the wall when he wrote above them.

On appeal, appellant argues that the trial court abused its discretion by permitting the State to introduce this statement into evidence. Appellant contends that the State could have presented additional foundational evidence, such as comparative samples of Kauffeld's handwriting or opinion testimony about the writing's authenticity. Appellant argues that absent that additional evidence, the statement was not admissible. Appellant also asserts that during the pretrial hearing, there was differing testimony about whether Kauffeld was the only cell occupant during the relevant time period, and furthermore, the correct spelling of Kauffeld's last name was not enough to authenticate the statement. We disagree that appellant has demonstrated that the trial court abused its discretion or committed reversible error.

It is well settled that challenges to the admissibility of evidence are left to the sound discretion of the circuit judge, and a judge's ruling on these matters will not be reversed unless there has been an abuse of discretion. *Lacy v. State*, 2010 Ark. 388, 377 S.W.3d 227. The abuse-of-discretion standard is a high threshold that does not simply require error in the trial

court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Grant v. State*, 357 Ark. 91, 93, 161 S.W.3d 785, 786 (2004). Nor will we reverse absent a showing of prejudice. *Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569.

Authentication of a document is a condition precedent to admissibility. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. Ark. R. Evid. 901(a) (2016). Rule 901 further provides that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, can be used to authenticate evidence. Ark. R. Evid. 901(b)(4). Authentication requirements are satisfied if the trial court, in its discretion, concludes that the evidence presented is genuine and, in reasonable probability, has not been tampered with or altered in any significant manner. *Davis v. State, supra*; *Doles v. State*, 2011 Ark. App. 476, 385 S.W.3d 315.

Appellant admittedly shot and killed Smith, and appellant admitted that he was the author of the first portion of the writing, where he named himself "FRED KILLER KAUFFELD." Appellant claimed that the lower portion of the writing (a claim of having shot the sheriff and killed his deputy) was already on the wall. Thus, appellant himself admitted to the entire writing's authenticity, even if he did not claim full authorship. *See Hodge v. State*, 332 Ark. 377, 965 S.W.2d 766 (1998) (holding that the admission of testimony, over hearsay objection, that Hodge and the victim could not get along was not

prejudicial in light of Hodge's own testimony about how he hated the victim); *Stephens v. State*, 328 Ark. 81, 90, 941 S.W.2d 411, 416 (1997) (holding that the State's witness's testimony was not prejudicial because it was cumulative of appellant's own, later testimony); *Griffin v. State*, 322 Ark. 206, 217, 909 S.W.2d 625, 631 (1995) (appellant suffered no prejudice from State's witness's mention of Griffin's crack cocaine purchase because later, during Griffin's case-in-chief, he testified that he had visited a drug house and smoked crack cocaine). The trial court acted well within its discretion to admit this evidence and did not commit reversible error, considering the testimony of jail personnel to verify appellant's sole occupancy of the cell, appellant's subsequent own admissions, and appellant's unique spelling of his last name.[3] This evidentiary ruling is affirmed.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*James Law Firm*, by: *Michael Kiel Kaiser* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

---

[3]We note that the case style on the appellate record reflects Kauffeld's name as "Kauffield." Prior to this appeal's submission to us, appellant's attorney filed a joint stipulation on behalf of appellant and the State, pointing out the incorrect spelling that contains an "i" and asking that the record be corrected to reflect the accurate spelling of appellant's last name.