WAYMOND M. BROWN, Judge
Appellant O'Tear Graves was convicted of first-degree domestic battery in the March 18, 2017 shooting of Alvertis Murry. She was sentenced to five years' imprisonment with an additional consecutive five-year sentence for use of a firearm. Appellant argues on appeal that the court erred in denying her motion to dismiss the charge because the State failed to introduce substantial evidence that when appellant shot Murry, she did not have a reasonable apprehension that she was in danger of great bodily harm at the hands of Murry. We affirm.
On March 18, 2017, Murry was driving down Allen Street in North Little Rock looking for his cousin, Cory Robinson, who happened to be homeless at the time. He subsequently came in contact with appellant, his ex-girlfriend, and was involved in both a verbal and physical altercation with her. The altercation ended when appellant shot Murry. She was charged with first-degree domestic battery, and the State included an enhancement for using a firearm. Appellant waived her right to a jury trial, and her bench trial took place on May 29, 2018.
Christina Martin, appellant's aunt, testified that appellant called her on March 18, 2017, asking if she was home because appellant was "going to pull up." Martin stated that she was inside her car eating when appellant pulled up but that she suddenly heard a commotion. She said that when appellant made it to the back of appellant's truck, Murry was in her face. She stated that they started cursing at each other and that she and appellant asked Murry to leave Martin's yard. Martin testified that Murry got in appellant's face and "mugged"[1] her in the face. Martin stated that appellant "mugged" Murry back and that when Murry went to push appellant again in the face, appellant "came up with the gun and shot him." Murry then told appellant that she had "caught [her] a charge" and left. Martin said that she did not know what the altercation between appellant and Murry was about.
Murry testified that as he passed by Martin's residence, something hit his vehicle. He stopped to see what it was and saw appellant standing there cursing at him. He began to curse back at appellant, and they had a verbal altercation. They subsequently came face to face with each other, and the altercation became physical. Murry testified that appellant then reached into her purse, pulled out a gun, and cocked it. He stated that he told appellant that since she pulled her gun on him, she was going to have to shoot him. He said that he told appellant that if she did not shoot him, then she was "pussy with it." He stated that appellant put her finger in his face and pushed him in the face. He *422 testified that he told appellant he would "beat [her] ass" if she put the gun down. However, he denied ever touching appellant. He stated that appellant backed up and pointed the gun toward his side and shot him. He said that Martin then responded, "O'Tear, you shot that boy." Murry testified that he walked to his vehicle and drove to the hospital. He stated that the bullet went straight through and that the hospital performed a CAT scan then cleaned and patched the wound. Murry admitted that he has a criminal history dating back to 1991, including first-degree battery, second-degree battery, and aggravated assault. He insisted that he never got physical with appellant that day.
On cross-examination, Murry stated that in 2009, he pled nolo contendere to second-degree battery charges on a North Little Rock police officer. He said that when appellant found out about the altercation, she called police and said that he shot at her. He denied having a long history of following appellant around. He said that even though there was a 2010 no-contact order against him, he and appellant had slept with each other on and off and were last intimate with each other two weeks before the shooting.
Officer Rathey of the North Little Rock Police Department testified that he had contact with appellant on March 18, 2017, after he responded to a person-shot call. He stated that appellant informed him that she had been in a verbal and physical altercation with Murry and that Murry "began to put his hands on her chest and she feared for her life, and therefore, she pulled a handgun out and ... shot him." He said that Murry was not at the scene but that he talked to other witnesses present. He testified that he arrested appellant for first-degree battery after completing his investigation.
On cross, Rathey stated that there was pushing and shoving both ways and that appellant pulled a gun and shot Murry. He admitted that at the time of the shooting, appellant had a valid concealed handgun license and that if a person "is in fear [for] their personal safety or their life, that is the purpose of having a concealed permit."
Appellant unsuccessfully moved for a directed verdict at the conclusion of the State's case on the basis that Murry was not her family or household member. Appellant testified that her relationship with Murry ended in 2009 or 2010 when he shot at her while her son was standing in the door. She testified that she had filed several complaints against Murry and had even tried contacting his parole officer. She stated that she was constantly harassed by Murry and that her kids were fearful of him. She said that when she went to her aunt's house on March 18, she could not tell if she was being followed. She testified that after she parked and got out of her truck, Murry rushed her and started "calling [her] out by name, disrespecting [her]." She stated that Murry "smushed" her in her face and that she kept telling him to leave her alone but that he kept harassing and bothering her. She said that she "smushed" Murry back in the face and continued to beg him to "quit, to stop, and he wouldn't. He wouldn't." She further testified,
I become [sic] very afraid, because he kept on and he kept walking towards me, and all I kept asking and begging for him to do, was leave me alone. Leave me alone. Just leave me alone, Alvertis, just leave me alone and he wouldn't. He wouldn't leave me alone. And he [drew] back to hit me and that is when I shot him. That is when I shot him.
(Inaudible) but he was going to hurt me. He was going to hurt me.
*423 She denied having a sexual relationship with Murry and stated that he was a "stalker." She submitted a police report filed against Murry on September 16, 2016, into evidence.
Appellant testified on cross-examination that she had filed several reports with the NLRPD against Murry for harassment and stalking and that she had gone to the prosecuting attorney's office several times. However, she stated that nothing had been done about Murry's actions. She said that Murry had harassed her over the past eight years and that she filed reports each time. She stated she did not know what the NLRPD did with eight years' worth of police reports. She testified that Murry has harassed her since she shot him and that the last police report she filed against him was on December 28, 2017. She admitted that she did not get an order of protection against Murry, but she said that was because Murry had one against her. She said that the day she shot Murry, he "had come over there [and] was disrespecting [her] in [her] auntie's yard, putting his hands on [her]." She stated that Murry was disrespecting her "in front of everybody. It was a gang of people out there. And I shot him. And then I shot him after he put his hands on me. I put my hand on him after he put his hands on me. He proceeded to draw back and hit me again, and that is when I shot him, as I stated." She testified that Murry was in the process of hitting her in her face with his fist when she shot him. She acknowledged that she did not live with Martin and that she did not try to leave. However, she stated that she tried to walk away and that she kept telling Murry to leave.
On redirect, appellant stated that she was afraid for her life. She said that Murry had taken shots at her before. She testified that although a lot of people were present when the shooting took place, "people don't want to be involved in nothing like this."
Appellant renewed her motion for directed verdict at the conclusion of the evidence, contending that she acted in self-defense. The court found that she had every opportunity to withdraw but did not and thus did not have a "valid self-defense plan." Appellant was found guilty and sentenced to an aggregate term of ten years' imprisonment. The sentencing order was filed on June 11, 2018. Appellant filed a timely notice of appeal on June 22, 2018.[2] This appeal followed.
Appellant argues that the court should have dismissed her charge for first-degree domestic battery because the State failed to introduce substantial evidence that when she shot Murry, she did not have a reasonable apprehension that she was in danger of great bodily harm at the hands of Murry. A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence.[3] A person may not use deadly force in self-defense if the person knows he or she can avoid the necessity of using deadly force by retreating.[4] However, a person is not required to retreat if the *424 person is unable to retreat with complete safety; if the person is in the person's dwelling and was not the original aggressor; or if the person is a law enforcement officer or a person assisting at the direction of a law enforcement officer.[5] Justification becomes a defense when any evidence tending to support its existence is offered; once raised, it becomes an element that must be disproved by the State beyond a reasonable doubt.[6] Whether one is justified is largely a matter of the defendant's intent and is generally a question of fact.[7] A person is justified if she can show the victim was the aggressor and the accused used all reasonable means within her power and consistent with her safety to avoid the use of deadly force; critical to this inquiry is the reasonableness of the accused's apprehension that she was in danger of death or great bodily harm, as well as whether the accused used all reasonable means consistent with personal safety to avoid the use of deadly force.[8] The fact-finder is free to accept or reject any part of a witness's testimony, and credibility and the weight to give any evidence are issues left solely to the fact-finder.[9]
Here, the court found that appellant did not retreat although she had every opportunity to do so. Appellant's argument focuses on her belief that she was in danger of great bodily harm, but it disregards the requirement that she attempt to retreat if she is not at her own residence and can do so safely. It is this requirement that the court found appellant was unable to satisfy in her defense of justification. We cannot say that this finding was in error. Accordingly, we affirm.
Affirmed.
Virden and Murphy, JJ., agree.

Martin explained that "mugged" means Murry pushed appellant in her face.

An amended sentencing order was filed on June 25, 2018, filling in portions of the order that had not been filled in on the original order. However, it did not change the overall disposition or sentence appellant received in the original order.

Ark. Code Ann. § 5-2-607 (a)(1) (Repl. 2013).

Ark. Code Ann. § 5-2-607 (b)(1).

Ark. Code Ann. § 5-2-607(b)(1)(B)(i)-(ii).

Green v. State , 2011 Ark. App. 700.

Id.

Id.

Kauffeld v. State , 2017 Ark. App. 440, 528 S.W.3d 302.