Cite as 2020 Ark. App. 198

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-19-743

|  |  |  |
|---|---|---|
| ADAM BROWN | | **Opinion Delivered:** March 18, 2020 |
| | APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CR-17-710] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### MIKE MURPHY, Judge

Adam Brown was convicted by a jury in the Greene County Circuit Court of first-degree murder. He was sentenced to forty years' imprisonment in the Arkansas Department of Correction. Brown appeals, arguing that the evidence was insufficient to rebut his justification defense and that the circuit court erred in denying his motion for new trial. We affirm.

On August 4, 2017, around 10:00 a.m., Brown shot and killed Jeremy Green during a custody exchange in a gas station parking lot. Brown and his girlfriend, Rachelle Green, first arrived at the gas station to retrieve Rachelle's daughter from her ex-husband, Green. Green then pulled up, parked his car at a gas pump, and went inside to buy ice. While Green made his way back outside, Brown approached him. Green went back to his vehicle

and was filling up a cooler with ice as the two exchanged words. Brown then fired multiple shots at Green who fell to the ground. Brown looked down at Green and blamed him for his actions, sat down on a bench, placed his gun in its holster next to him, and waited for police to arrive.

At trial, the jury viewed a video recording of the incident taken by a surveillance camera at the gas station. The jury also heard from several eyewitnesses. Heather Wilson testified that while pumping gas, she heard an argument between two men she identified as Brown and Green. She testified that she heard Brown loudly state that he wanted "to solve" whatever issue existed between him and Green and that she saw Brown walk toward Green while pulling a gun from his waistband. She said that in response, Green then grabbed the ball hitch out of the back of his vehicle and swung it toward Brown in self-defense, but Brown shot him in the chest several times.

Danny Franks also witnessed the shooting and heard the two men interacting as he was getting out of his car to head into the store. Franks testified that he heard Green offer to meet Brown elsewhere to "finish it," and Franks heard Brown respond with "we'll finish it now." Franks said he then went into the store and announced that he thought there was going to be a fight. He testified that he looked out the store window and could see Green come around his vehicle with something in his hand, and then he heard gunshots.

Justin Weatherford testified that while pumping gas, he witnessed Brown approach Green as Green came out of the store with ice. Similar to Franks's testimony, he testified that he heard Brown say either "we need to finish this" or "we need to solve this."

2

Weatherford said he then went inside the store, and as he was checking out, he heard three to four gunshots.

After the State rested, Brown moved for a directed verdict, arguing that his conduct was not purposeful because he shot Green in self-defense. The court denied the motion. The defense then presented evidence that Green had a history of domestic violence. Rachelle testified she divorced Green due to his abusive behavior and alcoholism. Brown testified Green had threatened him before.

Brown also testified about the day of the shooting, stating that while he was in his vehicle, Green walked by and flipped him off. He also testified that Green instructed Rachelle's daughter to call her mother disparaging and offensive names. Brown testified that he decided to confront Green and ask him to leave the children out of their issues. Brown testified that when Rachelle walked over, Green jumped up and said, "I got something for you," and he came at Brown with a trailer hitch. Brown said he pulled out his gun and walked toward Green to get him to drop the trailer hitch. He said Green started swinging the hitch and attempted to grab his gun. Brown said he then shot Green, and he kept shooting because Green did not stop attacking him.

Once the defense rested, Brown renewed his motion for directed verdict, which the circuit court again denied. After deliberations, the jury returned a guilty verdict and sentenced Brown to serve forty years' incarceration. Brown now timely appeals.

Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Swaim v. State*, 78 Ark. App. 176, 79 S.W.3d 853 (2002). When reviewing the

denial of a directed-verdict motion, the appellate court will look at the evidence in the light most favorable to the State, considering only the evidence that supports the judgment or verdict and will affirm if there is substantial evidence to support the verdict. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Jenkins v. State*, 2020 Ark. App. 45, ___ S.W.3d ___. Evidence is sufficient to support a verdict if it is forceful enough to compel a conclusion one way or the other. *Swaim*, 78 Ark. App. 176, 79 S.W.3d 853.

First, Brown challenges his first-degree-murder conviction, arguing there was insufficient evidence to prove he purposely caused Green's death. Rather, he claims that the evidence established that his actions were justified and that the State failed to negate his defense beyond a reasonable doubt.[1]

A person commits murder in the first degree if with a purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2019). A person acts purposely with respect to his conduct or a result of his conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). Arkansas Code Annotated section 5-2-607(a)(2) (Supp. 2019) provides that a person is justified in

---

[1]We disagree with the State's argument that Brown failed to preserve his justification argument for appeal. The record is clear that Brown based his motion for directed verdict on justification grounds and that the court understood the objection as such.

using deadly force upon another person if the person reasonably believes that the other person is using or is about to use unlawful deadly physical force. The State must prove each element of an offense, Ark. Code Ann. § 5-1-111(a)(1) (Repl. 2013), and whether circumstances negate a defendant's excuse or justification for the conduct is an element of the offense. Ark. Code Ann. § 5-1-102(5)(c) (Repl. 2013). When reviewing the sufficiency of the State's negation of a justification defense, we employ the substantial-evidence standard of review. *Gillard v. State*, 2019 Ark. App. 438, 586 S.W.3d 703.

Whether one is justified is largely a matter of the defendant's intent and is generally a factual question for the jury. *Kauffeld v. State*, 2017 Ark. App. 440, at 9, 528 S.W.3d 302, 309. A defendant's intent is ordinarily not subject to proof by direct evidence but must usually be established by circumstantial evidence. *Id.* Critical to this inquiry is the reasonableness of the accused's apprehension that he was in danger of death or of suffering great bodily harm. *Id.* Importantly, the defendant's belief must be objectively reasonable and not arrived at via fault or carelessness. *Id.*

Brown submits that he clearly used sufficient force to kill Green but that the State did not disprove that he was justified in using such force. Brown submits that the evidence established that Green first attacked Brown with the trailer hitch, and Brown defended himself. Brown further notes that he did not flee after he shot Green; rather, he remained at the scene and spoke to law enforcement.

Substantial evidence supports the jury's verdict that the State negated Brown's claim of justification. The jury was presented with testimony that Brown approached Green first,

5

pulled a gun out of his waistband, and charged at Green. Brown's contention that there was no inconsistent testimony allowing the jury to disregard the justification defense is not supported by the record. Wilson testified that Green said "don't do this right here," but Brown, while armed, stated that he wanted "to solve" whatever issue existed between him and Green. Two other witnesses testified that Brown said something to the effect of "we need to finish this." The jury also had the benefit of the surveillance video that showed the events leading up to the shooting and the actual shooting. Brown's argument asks us to give greater credence to his and Rachelle's testimony, which we will not do. The jury is free to accept or reject any part of a witness's testimony, and credibility and the weight to give any evidence are issues left solely to the jury. *Kauffeld*, 2017 Ark. App. 440, at 9–10, 528 S.W.3d at 309.

Brown cites *Maddox v. State* for his contention that the jury is allowed to disregard witness testimony when that testimony is contradicted by the physical evidence. 155 Ark. 19, 243 S.W. 853 (1922). However, unlike the facts in *Maddox*, there is no physical evidence here to contradict the witness testimony. Brown claims that none of the physical evidence conflicted with his version of the events but fails to assert on appeal what physical evidence conflicted with the State's position.

Brown further cites *Bailey v. State* to highlight the fact that he made no effort to flee or hide any evidence after the incident. 2016 Ark. App. 209, 489 S.W.3d 203 (holding that a jury may consider evidence of flight as probative evidence of guilt). However, the fact-finder need not view each fact in isolation but rather considers the evidence as a whole.

*Kauffeld*, 2017 Ark. App. 440, at 9, 528 S.W.3d at 309. Here, considering the eyewitness testimony and the surveillance video, the jury could conclude that Brown's belief that he was justified in using deadly force was not reasonable. Accordingly, having viewed the evidence in the light most favorable to the State, we hold that it was reasonable for the jury to reject Brown's justification defense.

For his second point on appeal, Brown asserts that the circuit court erred when it denied his motion for new trial. Brown filed a motion for new trial submitting that the manager of the gas station, Clayton Gibbons, perjured himself when he testified that he had not made his own copy of the surveillance video and that he had not shared it in the public domain. Brown further claimed that Rebecca Johnson, another State witness, perjured herself when she denied knowledge of another video having been made. The circuit court denied the motion.

The decision whether to grant a new trial is left to the sound discretion of the circuit court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Johnson v. State*, 2017 Ark. 106, at 2, 515 S.W.3d 116, 117. To prevail on a motion for new trial based on newly discovered evidence, the movant must show that the new evidence would have affected the outcome of his case and that he used due diligence in trying to discover the evidence. *Id.* We have recognized that newly discovered evidence is one of the least favored grounds to justify granting a new trial. *Id.* A new trial will not be granted because of perjury on an immaterial or a collateral issue or generally where the false testimony may be eliminated without depriving the verdict of

7

sufficient evidentiary support. *Bennett v. State*, 307 Ark. 400, 404, 821 S.W.2d 13, 15 (1991).

In *Bennett*, our supreme court reversed the circuit court's denial of a motion for new trial based on newly discovered evidence. There, the appellant's conviction was based solely on an undercover officer's testimony. At trial, the officer denied having had a sexual relationship with the appellant, but after the trial, the State stipulated that the officer had lied about the relationship. On appeal, the court reversed, holding that the officer's perjured testimony was a material issue. It based its holding in large part on the fact that without the officer's testimony, there would be insufficient evidence to support the conviction.

Here, we cannot say that Gibbons's and Johnson's perjured testimony about the surveillance video was a material issue. Unlike in *Bennett*, Brown's conviction was based on more than Gibbons's and Johnson's testimony. The jury heard testimony from eyewitnesses and viewed the original surveillance video. Notably, Brown does not challenge the actual surveillance video and what it depicts. Having considered our standard of review and the record before us, we agree with the circuit court that the false testimony would not have affected the outcome of this case.

Affirmed.

GLADWIN and SWITZER, JJ., agree.

*Stanley Woodard*, by: *William "Bill" Stanley*; *Ray Nickle*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

8

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.