Cite as 2021 Ark. App. 38

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-20-287

| | | |
|---|---|---|
| ANTONIO BAILEY | APPELLANT | **Opinion Delivered:** January 27, 2021 |
| V. | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-18-279] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ALEX GUYNN, JUDGE |
| | | AFFIRMED |

## MIKE MURPHY, Judge

On December 19, 2019, a Jefferson County jury found the appellant, Antonio Bailey, guilty of second-degree murder and sentenced him to forty-five years' imprisonment in the Arkansas Department of Correction—thirty for the second-degree murder, and fifteen for a firearm enhancement. On appeal, Bailey first argues substantial evidence does not support his conviction because the State did not negate his justification defense. He also contends that the trial court abused its discretion regarding a witness's competency to testify. Finally, he asserts that the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and that he was prejudiced by the lack of timely disclosure. We affirm.

This case arose from events that occurred on April 26, 2018. That afternoon, Bailey, Patrick McKenzie (the victim), Robert Goodwin, and Matthew Jordan were together in the parking lot of a local upholstery shop in Pine Bluff. Bailey asked the group to walk down to a nearby lake to help him look for some money he claimed he had lost.

McKenzie and Jordan followed Bailey down to the lake to help him look for the money. While McKenzie was helping look, Bailey shot him three times and then drowned him in the lake. Bailey then went to an apartment behind the upholstery shop. Goodwin and Jordan went to Jordan's brother's house and told him that McKenzie had been killed. The three then went back to the lake, and Jordan retrieved McKenzie's body. Jordan called the police.

After the police arrived at the scene, Detective Kaylon McDaniel went to the apartment behind the upholstery shop where he found Bailey in a back bedroom under a blanket. Bailey was arrested and interviewed. Bailey told police that he had been in a fight somewhere else, and his clothes were wet because he had urinated on himself. When asked what had happened to McKenzie, Bailey told officers that he had not done anything to McKenzie, was not at the lake, and did not know what happened.

At trial, Jordan testified that he had seen Bailey pistol-whip McKenzie and shoot McKenzie in the head while the two were fighting in the water. While testifying, Jordan had difficulty responding to questions, and he had to be cautioned by the court on several occasions. Near the beginning of Jordan's testimony, the proceedings were stopped, and Jordan was excused so that counsel and the court could discuss how to proceed.

At the sidebar, the prosecutor told the court that when she spoke with Jordan three days prior to the trial, his demeanor was different than when she originally took his sworn statement the day of the murder, but "nothing about our meeting with him or conversation with him led us to believe that he would testify any differently today than what he [stated] originally." She also learned during that meeting with Jordan that he was taking Haldol, an antipsychotic drug, but she told the court she did not have any medical records or

2

evaluations of Jordan. Again, the prosecutor stated that, besides his changed demeanor and discovering that he was taking Haldol, "nothing about [Jordan's latest] recounting of what happened on that day was any different than it was . . . [o]n the day he perceived it[.]"

On this basis, Bailey's attorney asked the court for a hearing to determine Jordan's competency to testify. Counsel also told the court that he did not believe the State had "done anything wrong[,]" but "if [Jordan] has psychiatric problems . . . [that is] *Brady* material that we have an absolute right to." Without asking any further questions to determine Jordan's competency or ruling on Bailey's arguments, the court allowed Jordan to continue to testify, stating, "We may see this again[,]" and "I'm going to be real patient." After this, Jordan continued to testify, but eliciting testimony from him was still difficult. At one point the court even remarked that Jordan "seemed like he was very agitated, [and] aggressive."

At the close of the State's case, Bailey moved for directed verdict, arguing that the State had failed to meet its burden on any level of homicide; Bailey also argued for directed verdict regarding self-defense. The trial court denied all defense counsel's motions for directed verdict.

Bailey testified that he was with McKenzie, Jordan, and Goodwin on the day of the murder. Bailey said that McKenzie lured him down to the boat ramps, pulled a gun on him, and told Bailey to give him everything he had. Bailey testified that McKenzie was within arm's reach of him when he pulled the gun on him. Bailey testified that he acted in self-defense to prevent McKenzie from robbing him of the money that was in his jeans.

Bailey renewed his motions for directed verdict at the close of the State's evidence, stating that the State had failed in its burden to show that he did not act in self-defense and

3

was not justified in defending himself from McKenzie. The trial court denied Bailey's renewed motion for directed verdict. Bailey claimed the justification of self-defense, and the trial court instructed the jury regarding the justification of self-defense.

The jury found Bailey guilty of one count of murder in the second degree with a firearm enhancement and sentenced him to a maximum term of thirty years in the Arkansas Department of Correction along with a fifteen-year consecutive sentence for a firearm enhancement for a total of forty-five years. This appeal followed.

Bailey first argues that the State did not adequately negate his justification of self-defense. He asserts that he was placed in a life-or-death situation, and the only reasonable option was to defend himself with deadly physical force. He points to his testimony in which he contended that McKenzie pulled a gun on him and attempted to rob him, and he claimed that he acted as any reasonable person would under the same circumstances.

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Robinson v. State*, 2017 Ark. App. 689, at 3, 537 S.W.3d 765, 767. Appellate courts will affirm the conviction if there is substantial evidence to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.* The evidence may be either direct or circumstantial; however, circumstantial evidence must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

To preserve a challenge to the sufficiency of the evidence in a jury trial, a criminal defendant must move for directed verdict at the close of the evidence offered by the prosecution and again at the close of all the evidence. Ark. R. Crim. P. 33.1(a). Justification

4

is not an affirmative defense that must be pleaded; it becomes a defense when any evidence tending to support its existence is offered to support it. *Schnarr v. State*, 2018 Ark. 333, at 10, 561 S.W.3d 308, 315. The justification of self-defense is considered an element of the offense in question, and once raised, it must be disproved by the State beyond a reasonable doubt. *Id.* In reviewing the sufficiency of the prosecution's negation of the justification, we determine whether there was substantial evidence to support a finding of justification. *Williams v. State*, 325 Ark. 432, 436, 930 S.W.2d 297, 299 (1996).

A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence; using or about to use unlawful deadly physical force; or imminently endangering the person's life or imminently about to victimize the person as described in Arkansas Code Annotated section 9-15-103 from the continuation of a pattern of domestic abuse. Ark. Code Ann. § 5-2-607(a) (Supp. 2019). A person may not use deadly force in self-defense if the person knows he or she can avoid the necessity of using deadly force by retreating or, with complete safety, by surrendering possession of property to a person claiming a lawful right to possession of the property. Ark. Code Ann. § 5-2-607(b)(1)(A) and (2). However, a person is not required to retreat if the person is unable to retreat with complete safety; if the person is in the person's dwelling and was not the original aggressor; or if the person is a law enforcement officer or a person assisting at the direction of a law enforcement officer. Ark. Code Ann. § 5-2-607(b)(1)(B)(i)–(iii); *Lewis v. State*, 2017 Ark. App. 442, at 6–7, 528 S.W.3d 312, 317. A person is justified if he can show the victim was the aggressor and the accused used all reasonable means within his power and consistent with his safety to avoid the use of deadly force; critical to this inquiry is the

reasonableness of the accused's apprehension that he was in danger of death or great bodily harm. *Id.*

We hold that the State presented sufficient evidence to negate Bailey's self-defense claim. Goodwin and Jordan testified that Bailey pulled a gun and shot McKenzie without provocation. They testified that McKenzie did not have a gun that day and did not attempt to rob Bailey. Bailey admitted that he shot McKenzie and then drowned him in the lake. Finally, there was evidence that, after killing McKenzie, Bailey attempted to hide from the police and lied to them, saying he was not involved in the murder when questioned about it.

Efforts to evade detection and lying to police about one's involvement in a crime can be considered evidence of consciousness of guilt. *Howard v. State*, 2016 Ark. 434, at 13, 506 S.W.3d 843, 850. The jury is free to accept or reject any part of a witness's testimony, and credibility and the weight to give any evidence are issues left solely to the jury. *Brown v. State*, 2020 Ark. App. 198, at 6, 595 S.W.3d 456, 460. Self-defense is "largely a matter of the defendant's intent and is generally a fact question for the jury." *Kauffeld v. State*, 2017 Ark. App. 440, at 9, 528 S.W.3d 302, 309. Bailey's argument asks that greater weight be given to his testimony, which we will not do. *Brown*, 2020 Ark. App. 198, at 6, 595 S.W.3d at 460. The foregoing facts constitute substantial evidence negating any reasonable belief that McKenzie was about to use violence or unlawful lethal force against Bailey.

Bailey next argues that the trial court abused its discretion by allowing Matthew Jordan to testify and that the State committed a *Brady* violation when it learned that Jordan was on antipsychotic medicine and did not disclose that information to defense counsel in a timely manner. Neither of these arguments are preserved for our review. Failure to obtain

a ruling on an issue at the trial court level—including a constitutional issue—precludes review on appeal. *Laymon v. State*, 2015 Ark. 485, at 5, 478 S.W.3d 203, 206–07. The burden is on the movant to obtain a ruling from the trial court, and a ruling cannot be presumed. *Sorum v. State*, 2019 Ark. App. 354, at 13, 582 S.W.3d 18, 27.

The extent of defense counsel's objection to Jordan's testimony was when counsel asked for a hearing to determine Jordan's competency to testify. Counsel never expressly objected to Jordan's testimony. And while counsel did assert that "if [Jordan] has psychiatric problems . . . [that is] *Brady* material that we have an absolute right to," counsel never made any specific arguments that a *Brady* violation existed, nor did he receive a ruling thereon. The court never ruled on *Brady* violations or Jordan's competency to testify, and Jordan was allowed to continue testifying. Bailey's counsel did not make any additional motions or arguments pertaining to Jordan's testimony at the close of Jordan's testimony, the State's case, or his own case. Accordingly, Bailey's arguments on these points are not preserved.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*James Law Firm*, by: *William Owen James III*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.