2010 Ark. App. 111

**Nathaniel PRICE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–508.**

Court of Appeals of Arkansas.

Feb. 3, 2010.

Richard Derek Barlow, Van Buren, AR, for appellant.

Karen Virginia Wallace, Little Rock, AR, for appellee.

KAREN R. BAKER, Judge.

A jury in Crawford County Circuit Court convicted appellant, Nathaniel Price, of two counts of rape as a habitual offender and sentenced him to thirty-five years' imprisonment in the Arkansas Department of Correction. Appellant presents the following four points of error: 1) that the trial court erred in denying his motion for directed verdict where the sum of the evidence, even when viewed in a light most favorable to the State, failed to amount to substantial evidence to justify appellant's conviction on two counts of rape; 2) that the trial court abused its discretion by allowing the testimony of Tiffany Spencer pursuant to Arkansas Rule of Evidence 404(b); 3) that Arkansas Rule of Evidence 404(b) violates a defendant's due-process rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by depriving a defendant of a fair and impartial trial; and 4) that the trial court abused its discretion in denying appellant's objection and motion for a mistrial with regard to the Arkansas State Police Investigator's double-hearsay comment concerning the alleged victim's disclosure at school that she was being sexually abused. We affirm. The first witness to testify at trial was Kristy Hewitt. Hewitt was the child victim's (K.L.'s) second-grade teacher at Alma Primary School. Hewitt testified that on October 31, 2007, a student in her second-

grade class who had been playing with K.L. approached her and told her that K.L. had told her of the allegations against appellant. Hewitt spoke with K.L. to determine if K.L. had in fact said such things about appellant to her classmate, and K.L. said that she had. Hewitt then took K.L. to the school counselor, Sue Hamilton. Hamilton testified that K.L. disclosed to her the same things about appellant as she had disclosed to Hewitt.

Tara Flute, an investigator with the Arkansas State Police in the Crimes Against Children Division, testified that she interviewed K.L. on October 31, 2007. During that interview, K.L. told Flute that appellant, her mother's boyfriend, had been sexually abusing her. Flute used anatomical drawings during the interview, and K.L. was able to identify the names of the male and female genitalia. After the interview, Flute discussed K.L.'s statements with Hewitt and Hamilton.

Flute then went to K.L.'s home to find K.L.'s mother. When she arrived, appellant was there alone. Investigators read appellant his rights and then spoke with him about the incident. Flute testified that she asked appellant if he knew why they wanted to speak with him, and appellant answered that it was about the allegations that Dark's daughter (K.L.) had made. Flute testified that she found it odd that even though appellant told her that he babysat the children while Darla was at work and lived with Darla and her children for a year, he acted as if he could not recall K.L.'s name. Appellant told Flute that the reason K.L. made the accusation against him was because she was unhappy with him for making K.L. and her siblings follow certain rules. Flute testified that when Darla, K.L.'s mother, arrived at the home, she was shocked about the accusations. Darla confirmed the accusations with K.L., and she became "bel-

ligerent" and began cursing appellant. Darla told appellant to "get out of the house."

Darla testified that she and appellant began their relationship in late 2005 or early 2006. Appellant lived with her and her other children, and she and appellant had a child together. She also testified that she worked the 2:00 p.m. to 10:00 p.m. shift at Mulberry Lodge, caring for mentally challenged residents. Appellant, who was disabled and unable to work, cared for Dark's children while she was working. On October 31, while at work, she received a call from the police asking her to come home. Darla testified that she believed what her daughter told police about appellant and that she was "very upset."

K.L., then nine years old, was next to testify at trial. She testified that in the evenings, while her mother was at work, appellant would tell her to go into her mother's bedroom. There, he told her to pull down her pants and panties, and he would "hump" her. She stated that appellant touched her beneath her clothes, got on top of her, and "humped" her while her legs were "open." Appellant would tell her that she had "good p—y" while he was "humping" her. She stated it was painful when appellant was "[moving] up and down." After appellant was finished, he would tell her to go to her bedroom and go to sleep and to not tell anyone. She explained that she was in the second grade when appellant began sexually abusing her. The first person she told of the abuse was her friend in her second-grade class. She then told her teacher, her school counselor, and the investigator of the abuse.

K.L. testified that she knew the difference between a "good touch" and a "bad touch." She also testified that she knew the names of the male and female genitalia and that she could identify them on a

drawing. She stated that she had seen appellant's private parts and stated that he stuck them in her "Va-gee-gee" and moved "up and down." K.L. testified that after appellant moved in with her sibling and her mother, things were going well; however, after appellant "started humping [her]," she did not like him anymore.

Sue Stockton, a certified sexual-assault nurse, provides forensic examinations on children for the Children's Safety Center in Springdale, Arkansas. She testified that on November 2, 2007, she performed a head-to-toe medical screening on K.L. The exam was normal; however, she explained that it was not uncommon (ninety percent of the time) to *not* find any physical injury to a child who says that they have had "penis penetration or otherwise." Because of the length of time that will often pass before a child will report a rape, any injury that may have occurred will have healed. Because K.L.'s physical examination did not reveal any injury, Ms. Stockton could not "say for sure that there was an absence of sexual abuse." However, she testified that she did not expect to see any evidence in a child that had been penetrated numerous times, even on a child that had been raped within forty-eight hours before the exam. Stockton testified that most of the time, physical evidence would only appear where there was a "traumatic rape" involving "brutal physical force."

Tiffany Renee Spencer, now twenty-six years old, testified that when she was a child, appellant and her mother were married. They lived together, and during that time, appellant "had sex with [her]." She stated that she first remembered it at the age of four and that the abuse occurred when appellant took care of her and her brother while her mother was working or attending school. On those occasions the abuse occurred in the mornings before he

took her to school. Because she was so young when the abuse began, she could not remember whether it was painful. She testified that the abuse continued until she was twelve or thirteen years old and stopped when she would no longer let appellant do such things to her. Appellant and her mother separated when she was eleven years old, but appellant continued to come to the house and take her and her brother to school. Tiffany, who still lived with her mother, did not tell her mother of the abuse until she was twenty-five years old.

Following Tiffany's testimony, the State rested its case. Appellant's counsel moved for a directed verdict, arguing that "we'd move for a directed verdict of acquittal based upon the sufficiency of the evidence that the State has presented in its case in chief after having rested. We feel that there is insufficient evidence for the jury to reach—absence any physical evidence of any abuse, that the, er, he be acquitted based upon that basis." The trial court denied appellant's motion. The defense then presented its case-in-chief beginning with Michelle Diane Randolph. Michelle testified that she had known appellant for approximately sixteen or seventeen years and that she and appellant lived together for eight or nine years, on and off. She explained that she and appellant were "sexually intimate."

The defense also attempted to present the testimony of D.R. D.R. testified that she currently lived with her grandmother, but in the past, when she lived with her mother and father, her Aunt Michelle would babysit her on weekends while her parents worked. Her Aunt Michelle was then living with appellant. She explained that she would often stay with appellant (whom she called Uncle Nate) when her Aunt Michelle was "not around." After the State's objection to the testimony, the

trial judge sustained the objection noting defense counsel's objection.

Next, appellant testified on his own behalf. Appellant testified that he lived with Darla and her children around the time of October 2007. Appellant was on disability for a previous work-related back injury. Because he was unable to work, he took care of the children after Darla began working. He stated the he "never had any sexual contact with [K.L.] when [he] was babysitting her." Appellant's only explanation for why K.L. would make such accusations against him was that she did not like that he made her follow his rules in the home, which resulted in him and K.L. not getting along. He stated that he did not know why K.L. was being "untruthful." He testified that he and Dark separated because the bills were "not getting paid."

Appellant also testified that he was previously married to Mona Price. When they married, Mona had a daughter, Tiffany, who testified at trial, and appellant and Mona had a son together, Nathaniel Jarron Price. Appellant testified that he and Mona divorced when Tiffany was seven years old and denied that he lived with Mona when Tiffany was twelve or thirteen years old. In his opinion, the only reason Tiffany would "perjure herself" during her testimony was because of the difficult relationship that he and her mother had. Appellant admitted that approximately ten years ago, he had an intimate relationship with Michelle Randolph.

At the conclusion of appellant's testimony, defense counsel renewed his motion for a directed verdict, stating that "we move for a directed verdict of acquittal based upon the sufficiency of the evidence that appears before the court at this time, that there's no sufficient evidence of a—the offense that has been alleged in this case to submit the case to the jury." The trial court denied the directed-verdict motion.

After the jury deliberated, they returned with a guilty verdict on both counts of rape and sentenced appellant to thirty-five years' imprisonment in the Arkansas Department of Correction. This appeal followed.

### I.  Sufficiency of the evidence

Appellant's first argument on appeal is that the trial court erred in denying his motion for directed verdict where the sum of the evidence, even when viewed in a light most favorable to the State, failed to amount to substantial evidence to justify appellant's conviction on two counts of rape. Arkansas Rule of Criminal Procedure 33.1(a) (2009) states that "[a] motion for directed verdict shall state the specific grounds therefor." Subsection (c) of the rule states that the motion must "specify the respect in which the evidence is deficient. Appellant's motion for a directed verdict was general in nature, stating "we'd move for a directed verdict of acquittal based upon the sufficiency of the evidence that the State has presented in its case in chief after having rested. We feel that there is insufficient evidence for the jury to reach—[absent] any physical evidence of any abuse, that the, er, he be acquitted based upon that basis." In light of Rule 33.1, the only issue that appellant has preserved for our review is whether the evidence was insufficient to convict him of rape where there was no physical evidence of abuse.

Our standard of review for a sufficiency challenge is well settled. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Gillard v. State*, 372 Ark. 98, 270 S.W.3d 836 (2008) (citing *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007)). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and con-

sider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

"A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person: who is less than fourteen (14) years of age." Ark. Code Ann. § 5–14–103(a)(3)(A) (Repl. 2006). "Sexual intercourse" means penetration, however slight, of the labia majora by a penis. Ark.Code Ann. § 5–14–101(10) (Repl.2006).

The uncorroborated testimony of a rape victim alone is sufficient to sustain a conviction. *See Ward v. State,* 370 Ark. 398, 260 S.W.3d 292 (2007); *Butler v. State,* 349 Ark. 252, 82 S.W.3d 152 (2002); *Hayes v. State,* 2009 Ark. App. 133, 2009 WL 476072; *Chrobak v. State,* 75 Ark.App. 281, 58 S.W.3d 387 (2001). Here, K.L.'s testimony was substantial evidence supporting appellant's convictions. *See Rouzer v. State,* 2009 Ark. App. 658, 2009 WL 3210641 (citing *Standridge v. State,* 357 Ark. 105, 161 S.W.3d 815 (2004)).

Appellant also alleges that in cases where a defendant testifies and denies the allegations, and where the victim does not give "compelling detail" about what a defendant did to him or her, it is "wholly incomprehensible how the jury could be convinced, beyond a reasonable doubt, of the defendant's guilt." We disagree. The testimony of the victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Bryant v. State,* 2010 Ark. 7, 377 S.W.3d 152 (citing *Rohrbach v. State,* 374 Ark. 271, 287 S.W.3d 590 (2008)); *see also Jones v. State,* 300 Ark. 565, 780 S.W.2d 556 (1989) (holding that testimony of child victim, standing alone, was sufficient to sustain rape conviction where victim clearly identified defendant and testified to the acts). The rape victim's testimony need not be corroborated, nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. *Gatlin v. State,* 320 Ark. 120, 895 S.W.2d 526 (1995). It is similarly not necessary for the State to prove specifically when and where each act of rape or sexual contact occurred, as time is not an essential element of the crimes. *Rains v. State,* 329 Ark. 607, 953 S.W.2d 48 (1997). In this case, K.L. testified consistently and with sufficient detail that appellant raped her, and we hold that substantial evidence supports appellant's convictions.

As to K.L.'s testimony, appellant alleges that it was procured "almost entirely through leading questions." However, appellant did not make any objection to the form of questioning at trial. The law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. *Ferguson v. State,* 343 Ark. 159, 33 S.W.3d 115 (2000). For this reason, this issue is not preserved for appellate review.

## II. Admissibility of the testimony of Tiffany Spencer

For his second point on appeal, appellant alleges that the trial court abused its discretion by allowing the testimony of Tiffany Spencer pursuant to Arkansas Rule of Evidence 404(b). The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, which will not be disturbed on appeal absent a showing of manifest abuse. *Eubanks v. State,* 2009 Ark. 170, 303 S.W.3d 450. Evidence of a person's bad acts is generally not

admissible to show that he or she acted in conformity therewith. Ark. R. Evid. 404(b) (2009). "Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, . . . or absence of mistake or accident." Ark. R. Evid. 404(b). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Eubanks, supra.* In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *Id.*

This court has long recognized a "pedophile exception" to Rule 404(b). *Eubanks, supra.* It has approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Id.* at 3–4. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.* at 4. For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Id.* We also require that there be an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*

Appellant argues that Tiffany's testimony was offered to show that appellant was a criminal, that he raped Tiffany, and that it was therefore logical that he raped K.L. The State alleges that Tiffany's testimony was admissible evidence of the appellant's intent, plan, motive, preparation, and opportunity and showed appellant's depraved sexual instinct toward a class of similarly situated persons—in this case, young girls who lived in his home. In cases involving evidence subject to the pedophile exception, we have looked to the similarities between the alleged prior conduct and the charged conduct to determine whether they make the evidence probative on the issue of the accused's motive, intent, preparation, plan, and scheme. *Eubanks, supra.* When the similarities are significant, we have permitted the evidence, despite the prejudice to the accused. *See id.; Flanery v. State, supra.* We have also noted that the evidence is permissible when the similarities make it probative on the issue of the accused's deviate sexual impulses. *See Flanery v. State, supra.*

Tiffany's testimony was that appellant and her mother were married and lived together when she was a child. She testified that appellant would care for her and her brother while her mother was at work or school, and from the time she was four years of age, appellant "had sex with [her]." The similarity of Tiffany's description of this abuse is strikingly similar to the testimony of K.L., making Tiffany's testimony probative of appellant's depraved sexual instinct toward young girls living in his home. We find no abuse of discretion by the trial court in admitting Tiffany's testimony at trial pursuant to the pedophile exception.

Additionally, despite appellant's argument to the contrary, the acts committed against Tiffany were not too remote in time. *See Allen v. State,* 374 Ark. 309, 287 S.W.3d 579 (2008) (finding that the witnesses' testimony helped to demonstrate defendant's intent regarding charges of rape where the acts occurred approximately twelve years prior to trial). *Allen, supra,* held that testimony regarding alleged prior sexual conduct may be admissible "even when a significant time gap exists." (citing *Flanery v. State,* 362 Ark. at 315,

208 S.W.3d at 190). Evidence of conduct occurring nearly twenty years prior to the charged conduct has been held admissible. *Id.* (citing *Lamb v. State,* 372 Ark. at 284–85, 275 S.W.3d at 149–50). Here, Tiffany testified that the abuse stopped when she was twelve or thirteen, which was approximately thirteen or fourteen years prior to trial. In light of *Allen,* the trial court did not abuse its discretion in finding that appellant's acts committed against Tiffany were not too remote in time.

Appellant further argues that the trial judge erred in failing to perform a Rule 403 analysis to ensure that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Rule 403 of the Arkansas Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2009). The balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and we will not reverse the court's ruling absent a showing of manifest abuse. *Bryant v. State,* 2010 Ark. 7 377 S.W.3d 152 (citing *Phillips v. State,* 344 Ark. 453, 40 S.W.3d 778 (2001)). Our review of the record shows that the trial court did weigh the probative value and the prejudice in admitting Tiffany's testimony; thus, there was no abuse of discretion.

Finally, appellant alleges that the trial court failed to admonish the jury as to Tiffany's testimony. However, appellant failed to make any objection at trial. It is a defendant's duty to request a curative instruction. *Moore v. State,* 355 Ark. 657, 144 S.W.3d 260 (2004) (citing *Hall v. State,* 314 Ark. 402, 862 S.W.2d 268 (1993)). Appellant's failure to request an admonition at trial cannot inure to his benefit on appeal. *Id.*

### III. Constitutionality of Rule 404(b)

For his third point on appeal, appellant alleges that Arkansas Rule of Evidence 404(b) violates a defendant's due-process rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by depriving a defendant of a fair and impartial trial. Specifically, he contends that he was deprived of his constitutional rights to a fair trial by the court's failure to exclude Tiffany's testimony that went directly to the establishment of his bad character. However, as the State notes, appellant failed to make this argument below. We will not consider issues raised for the first time on appeal, even constitutional ones, because the trial court never had the opportunity to rule on them. *Rye v. State,* 2009 Ark. App. 839, 373 S.W.3d 354 (citing *Thomas v. State,* 370 Ark. 70, 74, 257 S.W.3d 92, 96 (2007)).

### IV. Denial of appellant's motion for a mistrial

Appellant's final point on appeal is that the trial court abused its discretion in denying appellant's objection and motion for a mistrial in regards to Tara Flute's double-hearsay comment concerning the alleged victim's disclosure at school that she was being sexually abused. Appellant contends that the testimony was inappropriate and unduly prejudicial double hearsay used to influence the jury. It is well settled that a mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected by curative relief. *Sparacio v. State,* 2009 Ark. App. 350, 2009 WL 1154707 (citing *Brown v. State,* 74 Ark. App. 281, 47 S.W.3d 314 (2001)). A trial court has wide discretion in granting or

denying a motion for a mistrial, and the appellate court will not disturb the court's decision absent an abuse of discretion or manifest prejudice to the movant. *Id.* We find no error in the admission of this evidence for the purpose of establishing the basis for the actions taken, rather than for the truth of the matter asserted. But, even had the testimony been admitted in error, appellant cannot demonstrate prejudice where K.L. testified as to appellant's actions and where K.L. testified that she told her friend, her teacher, the school counselor, and Ms. Flute of appellant's actions. Where similar evidence is previously admitted without objection, the admission of later testimony on the same subject is not considered prejudicial. *Jenkins v. State,* 348 Ark. 686, 75 S.W.3d 180 (2002).

Finding no reversible error, we affirm on all points.

Affirmed.

GLADWIN and MARSHALL, JJ., agree.