

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–15–697

| | |
|---|---|
| RICHARD DEAN BAILEY<br>APPELLANT | Opinion Delivered April 13, 2016 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CR 2013-608-I] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Richard Dean Bailey appeals after he was convicted by a Garland County jury of murder in the second degree and was sentenced to 360 months' imprisonment. Appellant's sole contention on appeal is that the trial court erred in denying his motion for a directed verdict. He specifically argues that the State's evidence was insufficient to rebut his claim of justification under Arkansas Code Annotated section 5-2-607 (Supp. 2015). We affirm.

Appellant was charged by felony information with murder in the first degree. Early on July 10, 2013, Anthony Ward's body was discovered in the Hollywood Park area of Hot Springs, Arkansas. Near his body, investigators found a blue bag containing Ward's identification; several spots of blood that led to an overlook where there was even more blood; flip flops; a shell casing; a pair of blue gloves; and a number of cigarette butts. Investigators also discovered a folding knife in the front pocket of Ward's pants, which had

his blood on the handle and on the blade. Additionally, some pedestrians walking along the creek found a "Rambo style" knife later on that same day. After receiving information that clothing had been dumped in a dumpster at the Relax Inn in Hot Springs, investigators retrieved a pink sleeveless shirt with a rip on the right side, a white T-shirt, a pair of men's hiking boots, a pair of white socks, and a pair of khaki pants. The clothing was all wet, and a blue glove like the gloves found at the crime scene was discovered inside the back pocket of the khaki pants.

After appellant and his girlfriend, Debbie Huggins,[1] had become suspects, Detective Scott Lampinen interviewed them. A video of Detective Lampinen's interview with appellant was played for the jury. During the interview, appellant indicated that he and Huggins had been walking through the park after he had received treatment at the nearby hospital for an injured finger. Huggins had stopped to use the restroom and then wanted to soak her feet in the creek. While they were at the creek, appellant explained that Ward approached Huggins, ripped her shirt, and got on top of her. Appellant indicated that he was only five or six feet away from Huggins, and he admitted that he grabbed Ward's arm, flipped him over, and stabbed him. Appellant also told Detective Lampinen during the interview that Ward had tried to hit him after pulling him off of Huggins and that Ward said that he had a gun. Afterwards, appellant admitted that he threw his knife, fled the scene, and threw the clothing in the dumpster.

---

[1] At trial, Huggins testified that her last name at the time of the incident was Mullins, as she was married. However, she was divorced at the time of trial and preferred to be addressed by her maiden name, Huggins.

SLIP OPINION

Huggins testified at trial on appellant's behalf; however, her version of events varied slightly. She testified that she and appellant had entered the park after they left the hospital, where they took several blue gloves. She further testified that she did not soak her feet that night but that she had walked over to the dock after she had used the restroom. Appellant was not with her at that time, and Ward grabbed her wrist, pulled her down, and ripped her shirt. After she screamed for help, appellant pulled Ward off of her and told her to run. She testified that she had observed Ward falling down and appellant throwing his knife toward the creek. She indicated that she had lost one of her flip flops when they hid underneath a bridge before returning to the hotel. She admitted that appellant threw her shirt and his clothing away and that she had bought Clorox later that evening from an EZ Mart to change her hair color. Surveillance video from the Relax Inn and the EZ Mart was admitted at trial. Huggins further admitted that she had told Detective Lampinen that she was "out of harm's way" after appellant pulled Ward off of her. Additionally, she testified that she had told Detective Lampinen that appellant had become angry and stabbed Ward when Ward was not doing anything at that point. Despite the fact that Huggins and appellant discussed calling law enforcement after the incident, she testified that appellant was too afraid to do so because he was on probation.

The State introduced Johnathan Umphlett's testimony at trial. Umphlett testified that he was housed in the same unit at the same time that appellant was housed pending trial. He testified that appellant had initially told him that he had stabbed Ward in self-defense; however, appellant later changed his story. He explained that appellant subsequently admitted

that he had stabbed Ward after appellant was attempting to rob Ward, and Ward woke up and protested. Umphlett additionally explained at trial that he only contacted the prosecution with this information after he had already received his sentence for sexual assault and that he was not receiving anything in exchange for his testimony.

Appellant properly moved for a directed verdict after the State rested and properly renewed his motion for a directed verdict at the close of all the evidence. In relevant part, he argued that the State failed to negate his defense that his actions were justified. However, the trial court denied the motion, and the jury found appellant guilty of the lesser-included offense of murder in the second degree. The jury further recommended a sentence of thirty years' imprisonment, and appellant was sentenced in accordance with the jury's recommendation. This timely appeal followed.

Appellant's sole contention is that the trial court erred in denying his motion for a directed verdict, arguing that the State's evidence was insufficient to rebut his claim of justification under Arkansas Code Annotated section 5-2-607. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). On an appeal from a denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one

4

SLIP OPINION

way or the other beyond suspicion or conjecture. *Id.*

A person commits murder in the second degree if he or she "[k]nowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life" or "[w]ith the purpose of causing serious physical injury to another person . . . causes the death of any person." Ark. Code Ann. § 5-10-103(a)(1)–(2) (Repl. 2013). Justification becomes a defense when any evidence tending to support its existence is offered, and once raised, it becomes an element that must be disproved by the State beyond a reasonable doubt. *Green v. State*, 2011 Ark. App. 700. Whether one is justified is largely a matter of the defendant's intent and is generally a factual question for the jury. *Lewis v. State*, 2014 Ark. App. 730, 451 S.W.3d 591. A defendant's intent is ordinarily not subject to proof by direct evidence but must usually be established by circumstantial evidence. *Id.* Critical to this inquiry is the reasonableness of the accused's apprehension that he was in danger of death or of suffering great bodily harm. *Id.* Also critical is whether the accused used all reasonable means within his power and consistent with his personal safety to avoid the use of deadly force. *Id*; *see also* Ark. Code Ann. § 5-2-607. Furthermore, the jury may consider evidence of flight as probative evidence of guilt. *Lewis*, *supra.*

It is well settled that the credibility of witnesses is an issue for the jury and not this court. *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565. Furthermore, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In doing so, the jury may choose to believe the State's account of the facts rather than the defendant's. *Id.* Additionally, the jury is not

required to set aside common sense and need not view each fact in isolation, but it may instead consider the evidence as a whole. *Lewis, supra.*

Here, appellant admitted in the interview that was played for the jury that he had stabbed the victim but claimed that it was justified. However, the jury also heard evidence that after appellant had stabbed the victim, he immediately threw his knife toward the creek, fled the scene, failed to alert law enforcement, and threw away his clothes in a dumpster located at his hotel. Additionally, Umphlett testified that appellant had admitted in a conversation with him that it was not self-defense. Instead, Umphlett explained that appellant had told him that he had killed Ward after Ward woke up and protested the appellant's attempted theft of Ward's belongings. Although appellant asserts on appeal that Umphlett's testimony was "unbelievable," credibility determinations and the resolution of conflicting evidence are within the province of the jury. *See Airsman, supra.* Therefore, because there was sufficient evidence from which the jury could find that appellant was not justified in his use of deadly force in this instance, we affirm.

Affirmed.

KINARD and GLOVER, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.