Cite as 2024 Ark. App. 575

# ARKANSAS COURT OF APPEALS
### DIVISION II
No. CR-23-781

| | |
|---|---|
| DONALD J. MERRILL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered November 20, 2024<br><br>APPEAL FROM THE MARION COUNTY CIRCUIT COURT<br>[NO. 45CR-20-108]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This appeal comes from the Marion County Circuit Court's denial of appellant Donald Merrill's ("Merrill's") motion for a new trial following his convictions for two counts of rape and resulting sentence of forty years in the Arkansas Division of Correction ("ADC") on each count, to be served concurrently. On appeal, Merrill argues that the circuit court erred by denying his motions for directed verdict as to the two counts of rape because the evidence was legally insufficient. Merrill also contends that (1) the circuit court erred in denying his four motions for a mistrial; (2) the circuit court abused its discretion in denying his motion for a new trial on the basis of the prosecutor's conflict of interest; and (3) the circuit court erred by denying his motion for a new trial on the basis of the State's failure to disclose certain evidence. We affirm.

I. *Background Facts*

On November 4, 2020, Merrill was charged with two counts of rape and three counts of second-degree sexual assault. The criminal information alleged that on or before July 29, 2020,

Merrill engaged in deviate sexual activity with (1) a seven-year-old female; (2) a ten-year-old-female; and (3) a thirteen-year-old female in Marion County, Arkansas.

The first victim ("MC1"), who was thirty-one years old at the time of the trial, alleged that Merrill had sexually assaulted her approximately twenty years ago, when she was seven to nine years old and Merrill was married to her mother. Minor child ("MC2")—who was sixteen years old at the time of the trial—alleged that around the time she was seven years old, Merrill touched her vagina with his hand, put his penis inside her vagina, and "touched her boobs and her buttocks". Minor child ("MC3")—who was thirteen years old at the time of the trial—alleged that Merrill would make her lie in the bed with him and would rub her vagina with his hands and forced her to touch his penis.

In March 2020—before criminal charges were filed against Merrill—MC3 and her brothers moved to Florida to live with their maternal aunt, MC1. Two months later, MC3's mother informed MC1 that she had acquired a suitable residence and that MC3 and her brothers would be moving back to Arkansas. MC1 alleged that MC3 became "very emotionally upset" upon hearing she would be returning home to Arkansas and that MC3 disclosed to her that Merrill, her mother's live-in boyfriend, had been sexually abusing her. Accordingly, MC1 filed an emergency petition for guardianship of MC3 and her brothers. The emergency petition alleged that on at least one occasion, MC3's mother had performed oral sex on Merrill while he was molesting MC3. In November 2020, the guardianship petition was granted.

In addition to filing the emergency petition, MC1 contacted the local police department in Florida, and an investigation based on the allegations outlined in the petition ensued. During that investigation, MC1 disclosed that she also had been sexually abused by Merrill when he was

2

married to her mother.  She alleged that she was approximately six or seven years old when the abuse occurred. MC2 also came forward during the investigation and disclosed that Merrill had raped her when she was living with him and MC3.  MC2 alleged that Merrill sexually abused her several times between the ages of six and thirteen.

At trial, MC2 explained that Merrill would make her go into his room, where he would put her on his bed, take off her clothes, and "put his hand in [her] lower area."  She also testified that Merrill would "take his lower area and put it in [her] mouth and in [her] lower area."  MC2 stated that her "lower parts" were her female private parts, and Merrill's "lower area" meant his private parts.  When asked what Merrill would do with his male lower area, MC2 testified, "He would put it inside of me and put it inside of my mouth."

MC3 testified that while Merrill was living with her mother, he touched "[her] private" on the inside of her clothing on more than one occasion.  MC3 could not recall how many times Merrill had touched her inappropriately or how old she was when it happened, adding "I try to forget most of it."  When asked if she had ever gone to counseling or therapy "about this," MC3 stated, "I've gone a few times, but I didn't really say much."  At this time, defense counsel asked to approach the bench and insisted that the State provide MC3's counseling or therapy records. The circuit court asked the State if it was in possession of any such records, to which the State responded that it was not.  Accordingly, the court advised the State to move on from that particular line of questioning.

After the State rested, Merrill moved for directed verdicts on the three counts of second-degree sexual assault and the two rape charges.  The court granted Merrill's motions for directed verdict as to the three counts of second-degree sexual assault and denied the motions regarding

3

the two counts of rape. At the close of all the evidence, Merrill renewed his directed-verdict motions as to the remaining counts of rape, which the circuit court denied. The jury convicted Merrill of one count of rape against MC1 and one count of rape against MC2. Merrill was sentenced to forty years' imprisonment in the ADC on each count to run concurrently.

On August 7, 2023, Merrill filed a motion for a new trial. In the motion, Merrill argued he was entitled to a new trial for the following reasons: (1) there were four bases for a mistrial raised at trial and that each one required reversal; (2) the prosecutor had a conflict of interest in that his law partner represented MC1 in the guardianship proceeding at the same time the case was being investigated by the prosecutor's office; (3) the State failed to disclose that MC3 was a patient at a mental-health facility during the trial; and (4) the information read to the jury was confusing regarding the circuit court's grant of the directed verdict on the three counts of second-degree sexual assault. The circuit court held a hearing on Merrill's motion for a new trial on August 21, 2023; however, the court never issued an order; thus, it was deemed denied on September 6. Merrill filed a timely notice of appeal; this appeal followed.

## II. *Points on Appeal*

Merrill argues the following: (1) the evidence was legally insufficient; (2) the circuit court abused its discretion by denying his motion for a new trial based on the prosecutor's conflict of interest; (3) the circuit court erred in not granting his four motions for a mistrial; and (4) the circuit court erred by denying his motion for a new trial because the State failed to disclose that MC2 was an inpatient at a mental-health facility or psychiatric-treatment facility during trial.

## III. *Discussion*

### A. Sufficiency of the Evidence

4

Merrill raises several issues on appeal; however, double-jeopardy concerns require us to first address the sufficiency challenges. *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430. Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

On appeal, this court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the State, and we consider only the evidence that supports the verdict. *Price v. State*, 2010 Ark. App. 111, 377 S.W.3d 324. We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009).

Merrill contends that the circuit court erred in denying his motions for directed verdict because the testimony of the alleged victims was too vague to satisfy the elements of sexual intercourse. Specifically, Merrill contends that MC1's testimony was not "articulate" enough for the jury to conclude that his fingers penetrated the "labia majora" and that MC2's testimony was insufficient to demonstrate sexual intercourse because she testified only that Merrill put his "private parts" in her "private parts." This argument fails.

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1) (Supp. 2023). Deviate sexual activity means any act of sexual gratification involving "the penetration, however slight, of the anus or mouth of a person by the penis of another person" or "of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A)–(B) (Supp. 2023). It is well established that a rape victim's testimony alone can constitute substantial evidence to support a rape conviction. *Henson v. State*, 2009 Ark. App. 464, 320 S.W.3d 19. The jury has the sole authority to evaluate the credibility of evidence and to apportion the weight to be given to the evidence. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158.

A rape victim's testimony alone is sufficient and constitutes substantial evidence to support the conviction when the acts described fall within the definitions of deviate sexual activity. *See, e.g.*, *McCauley v. State*, 2023 Ark. 60, 663 S.W.3d 383. Furthermore, there is no requirement that there be scientific evidence of rape because the victim's testimony, if believed, constitutes sufficient evidence to establish guilt. *Hillman v. State*, 2019 Ark. App. 89, 569 S.W.3d 372. Here, MC1 testified that Merrill "stuck his fingers inside [her] vaginal area" over fifty times beginning when she was approximately six years old and that the sexual abuse lasted for three to four years. She also explained that one time after "he did it," she found blood on the toilet paper after she used the bathroom. MC2 testified that Merrill would take off her clothes, put her on the bed, and then put his hand in her "lower area," or he would put his "lower area" into her mouth or her lower area. She further testified that Merrill's "lower area" was his "private parts" and her "lower area" was her female private parts. According to well-established

6

precedent, MC1 and MC2's testimony constitutes sufficient evidence to support the rape convictions.

Moreover, Merrill's argument that the victims' testimony lacks sufficiency because it does not "articulate" that he penetrated their labia majora has been previously rejected by this court. *See Harlmo v. State*, 2011 Ark. App. 314, 383 S.W.3d 447 (holding that a victim is not required to use the correct terms for the body parts if she uses her own terms or shows an understanding of what and where the body parts being described are located).

## B. Conflict of Interest

Next, Merrill asserts that the circuit court erred by denying his motion for a new trial based on the prosecutor's conflict of interest. Our supreme court has held that "[d]isqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet, it is a drastic measure to be imposed only where clearly required by the circumstances." *Whitmer v. Sullivent*, 373 Ark. 327, 331, 284 S.W.3d 6, 9 (2008). Appellate courts review a circuit court's decision whether to disqualify an attorney under an abuse-of-discretion standard, and it will not be reversed absent a showing of prejudice. *See Stanton v. State*, 2023 Ark. 81, 666 S.W.3d 68.

Merrill maintains that a conflict of interest exists because Nicholas Ezell—the law partner of the elected prosecuting attorney David Ethredge—represented MC1 in the guardianship proceeding while criminal charges were being pursued against him. Essentially, Merrill argues that when MC1 sought emergency guardianship over MC3 and her brothers, based in part on allegations that Merrill sexually molested MC3, "it behooved the State to obtain a criminal conviction" over Merrill. This argument, however, was not raised before or during trial.

7

An issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *Fuller v. State*, 316 Ark. 341, 872 S.W.2d 54 (1994). Even a constitutional issue must be raised at trial in order to preserve the issue for appeal. *Id.* An objection made for the first time in a motion for new trial is untimely, *Donovan v. State*, 95 Ark. App. 378, 237 S.W.3d 484 (2006), and a motion for new trial cannot be used as an avenue to raise new allegations of error that have not been raised and preserved at trial. *Wooten v. State*, 2016 Ark. 376, 502 S.W.3d 503. Because Merrill raised this argument for the first time in his motion for new trial, this issue is not preserved for our appellate review.

### C. Mistrial

At trial, Merrill moved for a mistrial four times, all of which were denied by the circuit court. On appeal, Merrill argues that the circuit court committed error by denying all four motions. Furthermore, Merrill contends that the cumulative effect of the errors denied him a fair trial. We disagree.

A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when fundamental fairness of the trial has been manifestly affected. *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004). Declaring a mistrial is proper only where the error is beyond repair and cannot be corrected by any curative relief. *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). The judge presiding at trial is in a better position than anyone else to evaluate the impact of any alleged errors. *Venable v. State*, 260 Ark. 201, 538 S.W.2d 286 (1976). Therefore, the circuit court has wide discretion in granting or denying a motion for mistrial, and the decision of the

8

circuit court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Hall v. State*, 314 Ark. 402, 862 S.W.2d 268 (1993).

## 1. *Outstanding warrants*

First, Merrill contends he was entitled to a mistrial when Sergeant Campfield explained that he first made contact with him because "he was arrested for some outstanding warrants." At trial, defense counsel objected and argued that because the jury was left to speculate as to what the outstanding warrants were for, a mistrial was warranted. The circuit court denied Merrill's motion for mistrial, and over his objection, instructed the jury to disregard Sergeant Campfield's testimony regarding the warrant as irrelevant and from "traffic court."

On appeal, Merrill argues that the circuit court's admonition to the jury to disregard Campfield's statement did little to "unring the bell" that he had violated a law "of some kind" and that "he is just a plain old criminal who likes crime." Among the factors to be considered in determining whether a circuit court abused its discretion in denying a motion for mistrial are whether the prejudicial response was deliberately induced and whether an admonition to the jury could have cured any resulting prejudice. *McClinton v. State*, 2015 Ark. 245, 464 S.W.3d 913. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450.

Here, the prosecution asked the sergeant if during his investigation he ever made contact with Merrill. The prejudicial response, therefore, was not deliberately induced. Furthermore, the court instructed the jury to disregard the statement and explained that the outstanding warrant was irrelevant and from a "lower . . . traffic court." Accordingly, Merrill's assertion that

9

the jury was "free to guess what the warrants were for" is false. We find that the admonition cured any potential prejudice that the statement may have caused and affirm on this point.

### 2. *Referring to MC2 as a "victim"*

During Investigator Wayland's testimony, the State asked if she had located "any other victims" from the Arkansas Child Abuse Hotline. Merrill objected to the State's reference to "victims" rather than "alleged victims" and moved for a mistrial—arguing that referring to the complainants as "victims" violated the circuit court's pretrial ruling. The circuit court denied Merrill's second motion for mistrial but instructed the jury that because nothing had been proved, the complainants were "alleged victims."

On appeal, Merrill merely states that the circuit court's admonition to the jury did not cure the prejudice. Because Merrill failed to develop any argument as to how the State's one-time reference to "victims" constituted prejudice sufficient to warrant the extreme and drastic remedy of a mistrial, we hold that the admonishment was sufficient and affirm the court's decision not to grant a mistrial.

### 3. *Prior bad act*

During the direct examination of MC1, the State asked her why she waited so long to disclose Merrill's abuse, and MC1 responded, "To be honest . . . I'm terrified of him. I watched him drag my mom out with a knife to her neck." Merrill objected and moved for a mistrial, arguing that the State's question "called for the answer" given. Additionally, Merrill alleged that the prejudice could not be cured by an admonition. The circuit court denied Merrill's third request for a mistrial but instructed the jury to disregard the testimony regarding a knife.

On appeal, Merrill insists that MC1's testimony about his prior violence against her mother was overly prejudicial and that he was without any opportunity at trial to confront MC1's mother regarding this undisclosed incident. Specifically, Merrill argues that "the jury heard unchallenged, improper, and irrelevant evidence that [he] is a savage and violent man who dragged [MC1's mother] out with a knife to her neck"; thus, the circuit court's admonition failed to cure the prejudice resulting from the "particularly egregious" testimony.

A mistrial will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006). A circuit court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* In making its decision, the circuit court reasoned that the State did not deliberately induce MC1's statement about the knife incident. Furthermore, the State's question as to why MC1 waited so long to disclose that Merrill had abused her many years ago was relevant—considering the length of time between the molestation and the disclosure. Also, as noted by the State, MC1 testified—without objection—that she did not disclose the abuse earlier because Merrill always threatened to either "harm [her]" or "kill [them]." Thus, the jury heard unchallenged testimony that Merrill threatened to kill MC1 or kill "[them]" and that MC1 believed that he would do so if she disclosed what Merrill was doing to her.

In light of the record and our standard of review, we are not convinced that MC1's statement was so patently inflammatory that justice could not be served by continuing the trial. The court was also careful not to repeat the statement in case jurors did not hear it the first time,

11

only referencing "something about a knife" in the admonishment. Because the circuit court is in a better position to determine the effect of the remark on the jury, we do not find that the court abused its discretion; thus, the circuit court's denial of Merrill's third request for a mistrial is affirmed.

### 4. *Character evidence*

Merrill called Kenneth Amerson ("Amerson") as a witness, who testified that Merrill is his long-time friend and "a real good guy overall." Amerson testified that he lived with Merrill for a year in 2018 or 2019, and at that time, both MC2 and MC3 also lived in the home. On direct examination, when discussing the allegations in question, Amerson responded, "[Merrill] never touched any of those kids." When Amerson reiterated on cross-examination that Merrill is a good guy, the State asked Amerson if he knew Merrill was a convicted felon, to which Amerson responded that he did. Merrill objected, arguing that his status as a convicted felon was improper character evidence. In response, the circuit court denied Merrill's request for a mistrial, admonished the jury to disregard the State's question, and instructed that statements made by attorneys are not evidence.

Merrill maintains on appeal that the admonition did not cure the prejudice of the jury's learning that he is a convicted felon, and a mistrial was warranted because he was impeached by irrelevant, twenty-year allegations. Moreover, Merrill contends that when a fact witness testifies and does not testify about reputation or character, it is improper to cross-examine the witness regarding a defendant's prior conviction. While that is an accurate statement of the law, it is not applicable here because Merrill produced a character witness who testified that he is a good guy who "never touched any of those kids."

Our supreme court has recognized that by producing a character witness, the defendant opens the door to evidence that might otherwise have been inadmissible. *Smith v. State*, 316 Ark. 407, 872 S.W.2d 843 (1994). Arkansas Rule of Evidence 405 (2023) clearly provides that in cross-examining a defendant's character witness, it is permissible to inquire into the witness's knowledge of specific instances of conduct. *See Smith*, 316 Ark. at 411, 872 S.W.2d at 845. Such cross-examination tests the witness's knowledge of the defendant's reputation and that, in turn, may go to the weight to be given his opinion. *Id.* Further, Rule 405 places no limit, other than relevancy, on the kinds of instances of misconduct with respect to which cross-examination may occur. *Id.* Accordingly, Merrill's argument lacks merit, and we affirm the circuit court's denial of his motion for mistrial.

### 5. *Cumulative error*

Finally, with regard to Merrill's argument that he was entitled to a mistrial based on the cumulative effect of the errors alleged above, we affirm because our appellate courts do not recognize the cumulative-error doctrine when there is no error to accumulate. *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729.

### D. Failure to Disclose Evidence

For his last point on appeal, Merrill asserts that the State failed to disclose that MC2 was receiving mental-health treatment at the time of trial; thus, the circuit court abused its discretion in denying his motion for new trial on this ground. Specifically, Merrill argues that he had the right to question MC2 at trial about her inpatient residency at a mental-health facility and to seek any medical records related thereto. Accordingly, he maintains that the State's failure to disclose this evidence amounts to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

13

Merrill alleges that on the second day of the three-day jury trial, he learned MC2 was a ward in a mental-health facility or psychiatric-treatment facility and asserts that the State had this information and failed to disclose it in violation of *Brady*. Merrill bases this allegation on the fact that the State served MC2 with a subpoena—three days before trial—at an address that was not her home address in Crittenden County, Arkansas. However, this argument is not preserved for review, and we will not review a matter on which the circuit court has not ruled.

To preserve an issue for appellate review, the burden of obtaining a ruling is on the movant. *Buckley v. State*, 2023 Ark. App. 330, 669 S.W.3d 631. Here, Merrill failed to alert the circuit court to this alleged violation at trial but instead raised it for the first time in his motion for a new trial. In *Buckley*, this court held that an appellant cannot use a motion for a new trial to raise a *Brady* violation that was not preserved at trial. *Id.* Nevertheless, even if the argument was preserved, we would affirm because the State has no obligation under *Brady* to turn over a victim's mental-health records to which it does not have access. *See Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000).

Further, even if MC2 was undergoing inpatient treatment at a mental-health or psychiatric-treatment facility, Merrill could not prove prejudice from their lack of disclosure because MC2 is exempt under Arkansas Rule of Evidence 503(b) from disclosing her medical records. *See id.* As set forth by our supreme court, a party cannot circumvent Rule 503 by calling into question any witness's mental or emotional condition; "[s]uch a result is clearly not intended by this rule." *Id.* at 195, 27 S.W.3d at 411. Finally, in *Turnbo v. State*, 2021 Ark. 166, at 7–8, 629 S.W.3d 797, 802, our supreme court reiterated the point that a criminal defendant

has no right to a victim's private psychiatric records because the privilege is "absolute" under Rule 503(b).

IV.  *Conclusion*

For the above-stated reasons, we affirm Merrill's convictions for rape.

Affirmed.

HARRISON, C.J., and BROWN, J., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.