Cite as 2025 Ark. App. 359

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-24-334

| | | |
|---|---|---|
| JOHN SANDERS | | Opinion Delivered June 4, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | | [NO. 16JCR-22-1650] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This is an appeal from appellant John Ellis Sanders's conviction by a Craighead County jury of second-degree battery and resulting sentence of fourteen years' imprisonment in the Arkansas Division of Correction ("ADC") and a $2,000 fine. Sanders argues on appeal that the circuit court erred by denying his motion for a directed verdict because the State failed to prove that he acted with intent to cause injury. He also maintains that the State failed to negate his justification defense. We affirm.

I. *Background Facts*

On October 16, 2022, Colden Kain, a correctional officer at the Craighead County Detention Center, was conducting his rounds that included cell block M-3—where Sanders was housed. The cell block was monitored by surveillance cameras. Before exiting the cell

block, Sanders approached Officer Kain and asked him for a laundry bag for the dirty blankets and towels. Officer Kain testified he had already notified Sanders that he informed laundry of the request, but Officer Kain reiterated again to Sanders that his request had been communicated. Officer Kain testified that Sanders responded, "Bullshit, you're just being a lazy mother f*****," and as a result, Officer Kain told him he was being disrespectful and to return to his cell.

Sanders refused, so Officer Kain moved toward him and attempted to physically direct Sanders to his cell. Sanders resisted, slid the electronic tablet he was carrying under the staircase, and took what Officer Kain considered to be an aggressive stance. Officer Kain then pulled out his pepper spray and sprayed Sanders. Immediately thereafter, Sanders began punching Officer Kain. The officer tried to retreat behind the stairwell, but Sanders followed him and continued hitting and kicking him even after he fell to the floor. Officer Kain sustained a head injury when Sanders pushed him into iron bars. Sanders had ceased his attack on Officer Kain by the time responding officers arrived at the cell block. Sanders was then taken down to the ground by the responding officers, handcuffed, and escorted from the cell block. Surveillance video was admitted into evidence at Sanders's trial.

At trial, Officer Kain testified that he received treatment at the hospital as a result of Sanders's attack. His documented injuries included a large knot on his head, a swollen lip, and facial bruising. The medical records documenting Officer Kain's treatment and photographs of his injuries were admitted into evidence without objection. David Bailey, the detective who investigated the case, testified that he was familiar with operations and

2

procedures of the detention center's management as well as the nondeadly effects of pepper spray used in the facility. Detective Bailey testified that Officer Kain was trained to "go to the next step if it's a situation [that] could get physical."

At the close of the State's case, Sanders moved for a directed verdict. Sanders argued that the State failed to demonstrate he knowingly caused physical injury to Officer Kain because he was not able to "think clearly or understand what he was doing" after he was pepper sprayed. Furthermore, Sanders maintained that the State failed to prove "sufficient physical injury" and that he was justified in using force against Officer Kain. The circuit court denied the motion.

Sanders testified in his own defense. He claimed that when Officer Kain returned to the cell block, he asked again about the laundry bag, and Officer Kain instructed him not to ask again "or else." Sanders testified that he felt threatened and responded, "Or else what?" Officer Kain replied, "[S]ince you want to be disrespectful, you can go up." Sanders maintained that he was standing by his cell but that the door was locked so he could not enter. Sanders testified that Officer Kain then "put his hands" on him, and in response, he dropped the tablet he was using because he did not want Officer Kain to think he was going to use the device as a weapon. Sanders said he then saw Officer Kain reach for his pepper spray and warned Officer Kain that he "better not spray [him] with no Mace."

Sanders testified that, after Officer Kain pepper sprayed him, he "didn't know what to expect" and that he "may have overreact[ed]." Sanders claimed that he "grabbed" Officer Kain because he was blinded by the pepper spray and that he was "hitting [Officer Kain] a

3

lot of times." Sanders said that he continued hitting Officer Kain because he thought, at that

point, other officers would come in and "break [his] arm" or "something like that" if he let

Officer Kain get on top of him.

On cross-examination, Sanders was shown the video of the incident at the point

where he resisted Officer Kain's attempt to physically direct him to his cell. Sanders denied

he was resisting and insisted that he just "didn't want to be pushed." When shown the

portion of the video that depicts Officer Kain attempting to get away, Sanders maintained

that he was pursuing him in self-defense. Moreover, Sanders claimed that after Officer Kain's

head was pushed into the iron bars, he "let up off of him" because if he had not done so, "it

would have been worser than that."

At the close of evidence, Sanders renewed his directed-verdict motion, arguing that

he thought he was justified in using force to defend himself, and furthermore, the State had

not met its burden of proof that he caused physical injury to an individual working as a

correctional officer. The circuit court denied the motion. The jury found Sanders guilty of

second-degree battery, and the circuit court sentenced Sanders to fourteen years'

imprisonment in the ADC and a $2,000 fine. This appeal followed.[1]

---

[1]Sanders did not file a notice of appeal within the thirty-day period allowed for filing the notice under Rule 2(a) of the Arkansas Rules of Appellate Procedure–Criminal. As a result, Sanders's counsel filed a motion to lodge a belated transcript with this court wherein he alleged that the motion was in the best interest of justice for good cause. However, counsel did not candidly admit fault—or even put the court on notice that the notice of appeal was untimely—instead, he maintained that a signed copy of a notice of appeal was presented to the circuit court clerk for filing. As our supreme court announced in *McDonald v. State*, 356 Ark. 106, 146 S.W.3d 883 (2004), the proper motion to be filed when an

## II. *Standard of Review*

On appeal, this court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Price v. State*, 2010 Ark. App. 111, 377 S.W.3d 324. We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009).

## III. *Discussion*

Sanders argues on appeal that the circuit court erred by not granting his directed-verdict motion because the State failed to prove beyond a reasonable doubt that he had the

---

attorney has erred is a motion for a belated appeal. The supreme court has held that where a motion for rule on clerk is filed in error, it will be treated as a motion for belated appeal. *Id.* at 114, 146 S.W.3d at 889. Thus, this court granted Sanders's motion to lodge a belated transcript and allowed the appeal to move forward. *See K.L. v. State*, 2009 Ark. 82, 313 S.W.3d 5 (holding that when it is plain from the motion, affidavit, and record that relief is proper under either rule based on error or good reason, the relief will be granted).

We note, however, the well-established principle that an attorney is responsible for filing the appeal and cannot shift that responsibility to another. *See, e.g., McDonald*, 356 Ark. at 114, 146 S.W.3d at 889. Accordingly, we strongly encourage counsel to review our rules of appellate procedure and our appellate court rules.

requisite intent to commit battery in the second degree and did not negate his justification defense. We disagree.

A person commits battery in the second degree if the "person knowingly, without legal justification, causes physical injury to or incapacitates a person he or she knows to be . . . [a] law enforcement officer . . . or employee of a correctional facility while the law enforcement officer . . . or employee of a correctional facility is acting in the line of duty." Ark. Code Ann. § 5-13-202(a)(4)(A)(i) (Repl. 2024). A person acts "knowingly" with respect to the "person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist" or a "result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result." Ark. Code Ann. § 5-2-202(2)(A), (B) (Repl. 2024). "Physical injury" is defined as "(A) Impairment of physical condition; (B) Infliction of substantial pain; or (C) Infliction of bruising, swelling, or a visible mark associated with physical trauma." Ark. Code Ann. § 5-1-102 (14) (Repl. 2024).

## A. Intent

First, Sanders maintains that the State failed to meet its burden of proving that he had the requisite intent to commit battery. Specifically, Sanders argues that his behavior was the result of Officer Kain's "aggressive nature" in the use of pepper spray. Moreover, Sanders asserts that he did not intend to cause physical injury to Officer Kain—it was just his instinctive reaction to being sprayed with pepper spray.

6

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

Here, sufficient evidence exists that Sanders knew his conduct would cause the resulting injuries to Officer Kain. The testimony of Officer Kain, as well as that of Sanders, was that Sanders continued punching and kicking him even after Officer Kain attempted to retreat under the stairwell. Sanders testified that he eventually "let up off of [Officer Kain]" because he was about to hit the cell bars, and if he had not done so, "it would have been worser." Furthermore, surveillance video clearly shows Sanders punching Officer Kain in the head, chasing him around the stairwell, knocking him down, then continuing to hit and kick Officer Kain. Finally, the photographs of injuries and bruising demonstrate that Officer Kain sustained physical injury.

## B. Justification

Next, Sanders maintains that he was acting in self-defense, and the State failed to negate his justification defense. Specifically, Sanders argues that Officer Kain was the initial aggressor, and being sprayed with pepper spray caused him to "strike out in fear"; thus, he

7

"reacted in a normal, lawful manner." We disagree. Arkansas Code Annotated section 5-2-605(2) (Repl. 2024) states that the use of nondeadly force by a correctional officer is justifiable "to the extent reasonably necessary to maintain order and discipline." Therefore, while Sanders hinges his justification defense on the fact that Officer Kain "was the initial aggressor" and pepper sprayed him, his argument fails.

Detective Bailey testified that before being pepper sprayed, Sanders failed to follow a command from Officer Kain, and only after Sanders assumed an aggressive stance was he pepper sprayed. Detective Bailey testified that in his experience, Officer Kain escalated his response to Sanders "as he was trained to do." Moreover, Officer Kain testified that he deployed the pepper spray only "because the de-escalation tactic of [him] escorting [Sanders] to his cell was going to be non-cooperative." Officer Kain testified that he first tried to use "soft hand control" by holding Sanders by the arm and directing him to where he was instructed to go, and after Sanders pulled away, he became what is referred to as "an active resister." The next step pursuant to protocol, Officer Kain testified, was to deploy either pepper spray or a tool taser.

At trial, Sanders admitted that he failed to comply with Officer Kain's orders. The video shows Sanders resisting Officer Kain's "soft hand control" and instead sliding the electronic tablet he was holding under the stairs, hitching up his pants, and facing Officer Kain. After Officer Kain deployed the pepper spray, Sanders punched and kicked Officer Kain repeatedly—despite the officer's attempts to retreat from him—and delivered a punch to Officer Kain that caused his head to hit the iron cell bars.

Justification to use physical force is largely a matter of the defendant's intent and is generally a factual question for the jury. *Bailey v. State*, 2016 Ark. App. 209, 489 S.W.3d 203. The fact-finder is not required to set aside common sense and need not view each fact in isolation but rather considers the evidence as a whole. *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006). The substantial-evidence standard of review applies when reviewing the sufficiency of the State's negation of a justification defense. *See T.R. v. State*, 2018 Ark. App. 328, 552 S.W.3d 452.

Here, the jury was free to accept or reject Sanders's version of events and reach the conclusion that he was not justified under the circumstances in using physical force on Officer Kain. Sanders testified that he was defending himself; however, he also admitted in his testimony that Officer Kain attempted to retreat. Furthermore, the surveillance video was played for the jury; thus, the jury was not left to resort to speculation or conjecture to reach its conclusion that the State negated Sanders's claim of self-defense.

IV. *Conclusion*

For the above-stated reasons, we find that there was sufficient evidence to support Sanders's second-degree-battery conviction; thus, we affirm.

Affirmed.

KLAPPENBACH, C.J., and TUCKER, J., agree.

*Terry Goodwin Jones*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.